### JOHN E. FITZGERALD *vs.* MICHAEL PENDERGAST.

The plaintiff took of a stone-cutter a bill of sale of his stock and a lease of his stone-yard, allowing him still to carry on the business. The defendant made a contract with the stone-cutter. In defence to an action brought by the plaintiff upon the contract, as a contract made with him through the stone-cutter, his agent, the defendant contended that the stone-cutter did business for himself, under cover of a pretended sale, and, as tending to show this, offered among other things to prove that before the alleged sale frequent suits had been brought against the stone-cutter in which his property had been attached. *Held*, that the evidence was admissible.

CONTRACT to recover for labor and materials furnished by the plaintiff, in curbing a cemetery lot for the defendant at an agreed price.

At the trial in the Superior Court, before *Allen*, J., it appeared that prior to June 30, 1870, one Gill and one Bell, as copartners, carried on the business of stone-workers at a yard in Waltham. The plaintiff offered evidence that on June 30 he purchased of them their stock and business, taking a bill of sale, and took a lease of the yard; that afterwards the business was carried on in his name and for his benefit; that he employed Gill & Bell to carry it on for him, for a weekly compensation, till January 1, 1871, when he discharged Bell, and afterwards employed Gill alone who continued to carry on the business as his agent; that in November or December, 1870, the defendant made a verbal contract with Gill to furnish the curbing in question for $160, payment to be made May 1, 1871; that the curbing was furnished from the yard, and was finished in April, 1871; that in May, 1871, Gill presented to the defendant a bill for the curbing made out in the plaintiff's name, and notified him that the plaintiff was the party in interest, and demanded payment for him, and that nothing was said to the defendant about the plaintiff before that.

The defendant contended, and offered evidence tending to prove, that the sale from Gill & Bell to the plaintiff was a sham; that they continued after it to be the beneficial owners of the stock and business, and carried on the business for their own benefit; that the plaintiff paid no consideration for the purchase, and had no interest in the business; that the stock was purchased and the labor furnished by Gill & Bell, after the date of the sale, as before; that the business was carried on in their name; that the contract for the curbing was made with them, and for their benefit; that the labor and materials were furnished by them and not by the plaintiff; and that the defendant had no knowledge that the plaintiff had, or claimed to have, any interest in the business or in the contract, but that he believed that Gill & Bell were the parties thereto.

The defendant offered evidence tending to show that previous to the date of the bill of sale, Gill & Bell were frequently sued and their property attached, as tending to show that the object of the bill of sale was to keep the property from attachment and

not an absolute and *bonâ fide* sale to the plaintiff. This evidence was objected to by the plaintiff, and the court excluded it and ruled and instructed the jury that if there was an actual sale by Gill & Bell to the plaintiff, and if the business belonged to the plaintiff and was carried on for him, and the contract was in fact made and carried out in his behalf by Gill as his agent, it was immaterial if the object of the sale was to keep the property from attachment by creditors of Gill & Bell.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. Rutter*, for the defendant.

*A. Wellington*, for the plaintiff.

WELLS, J. The debt, for which the defendant was sued in this action, arose from a contract made nominally with Gill & Bell. The plaintiff seeks to recover on the ground that he was the real party, Gill & Bell being merely his agents in the transaction. The question to be submitted to the jury was whether that was the true relation of the parties, or whether it was a pretended and fictitious relation assumed to answer some purpose of Gill & Bell, while they in fact were the owners of the whole interest in the property and in the business which they carried on.

There had been in June, 1870, a formal bill of sale of the property of the firm to the plaintiff, and a lease of the yard in which their business was done ; and Gill & Bell for a time, and afterwards Gill alone, had conducted the business as the plaintiff's agents. The debt of the defendant was contracted while this condition of things existed, though, as he offered to prove, he had no knowledge of the agency.

The defendant contended, and offered evidence tending to prove, that the sale was " a sham ; " that Gill & Bell continued to be the beneficial owners of the stock and business, and carried on the business for their own benefit; that the plaintiff paid no consideration for the purchase and had no interest in the business and that the contract with the defendant was not only made with Gill & Bell, but was in reality for their benefit, and that they furnished the labor and materials for its execution.

The defendant also offered evidence that, previous to the date of the bill of sale, Gill & Bell were frequently sued and their property attached; as tending to show that the object of said bill of sale was to keep the property from attachment, and not an absolute and *bonâ fide* sale to the plaintiff. This was excluded, the court ruling and instructing the jury that, " if there was an actual sale by Gill & Bell to the plaintiff, and if the business belonged to the plaintiff and was carried on for him, and the contract was in fact made and carried out in his behalf by Gill as his agent, it was immaterial if the object of the sale was to keep the property from attachment by creditors of Gill & Bell."

But, upon the question whether there was an actual sale, evidence that Gill & Bell were embarrassed, or annoyed by their creditors, was competent, as tending to show the existence of a reason and motive for making a fictitious and colorable transfer of their property, as the defendant alleged this to be, in order to protect themselves against further trouble of that sort, and still continue in the control and beneficial use of it and of their business. The proposition stated by the court may have been entirely correct in itself; and, in the aspect in which the case was presented by the pleadings and evidence, we are inclined to think it was so ; but the evidence offered bore upon the very hypothesis upon which it rested, to wit, an actual sale. The ruling and instruction were apparently made upon the supposition that the only effect of the evidence would be to sustain a defence on the ground of fraud upon creditors. The court may have been mis-led by an inexplicit or incomplete statement of the purpose, by which the offer was accompanied. But, as we find it in the exceptions, the terms of the offer do not imply that it was limited to the purpose of such a defence. The exclusion of the evidence was therefore erroneous.

The other questions argued before us do not seem to be presented, upon this bill of exceptions, in such manner as to make any decision of them now of any advantage in a new trial.

Upon the single point which we have considered above, the

*Exceptions are sustained.*