## JOHN C. JONES *vs.* WILLIAM B. AMES.

Suffolk. March 16. — Sept. 8, 1883. DEVENS & W. ALLEN, JJ., absent.

A contract for the purchase of stocks, to be delivered within a specified time, made by a broker in pursuance of an order of a customer, who deposits with the broker a part of the price of the stocks as a "margin," and who is to pay or receive any difference between the contract price and the market price of the stocks on the day the contract matures, if closed by the broker, is not illegal, even if it falls within the Pub. Sts. *c.* 78, § 6, but the broker may maintain an action against the customer for money paid under such contract; and, if the customer sets up the illegality of the contract as a defence, he has no ground of exception to a ruling that the burden is on him to prove such illegality.

CONTRACT for money paid. Trial in the Superior Court before *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show that the plaintiff, as a stockbroker in Boston, was directed by the defendant to purchase certain stocks of various companies incorporated under laws of the United States, the defendant depositing with the plaintiff a portion of the price of said stocks, which deposit was known as a margin. The plaintiff testified that he made, in pursuance of the defendant's orders, contracts with certain persons, named Brown, Smith and Watson, and others whose names he could not give, by which they agreed to deliver the stocks ordered at the market price on the day of the contracts, at any time within sixty days, the buyer to have the option to call for the stocks at an earlier day. The plaintiff also offered evidence that, at the maturity of these contracts, or earlier if the defendant desired, they were to be closed by the plaintiff, the defendant paying or receiving any difference between the contract price and the market price on the day of such closing, according to the rise or fall of price of stocks with reference to the contract price; the defendant to receive the profit or bear the loss, and to pay the plaintiff broker's commissions and interest on the contract price as if the stocks had been actually bought and sold.

The defendant offered evidence tending to show that he ordered the plaintiff to buy the stocks outright on the defendant's account; that the plaintiff agreed so to do, and to carry the stocks for the defendant for the sixty days, on the payment

of a proper sum as a margin to the plaintiff; and that he never ordered the plaintiff to buy time contracts, but always supposed that the plaintiff had bought the stocks outright.

There was conflicting evidence as to whether Smith, Brown, Watson, and others, with whom the plaintiff testified he made the contracts, were, at the time of making the contracts, the owners or assignees of the stocks contracted for, or authorized by the owner or assignee of the same, or his agent, to sell or transfer the certificate or other evidence of the shares so sold or contracted for; also as to whether the plaintiff made any actual purchases or sales of said stocks, and whether he paid any sums of money to any person by reason of said transactions.

The defendant contended that the plaintiff had made no actual purchases or sales, and had made no payments on account thereof; and that any contracts made by him, as testified to by him, were illegal and void, under the law of this Commonwealth. But the judge, at the request of the plaintiff, ruled that the burden of proof was on the defendant to show that the contracts, if made, were illegal and void, and that Smith, Brown, Watson, and others were not, at the making of said contracts, the owners or assignees thereof, or authorized by the owners or assignees, or their agents, to sell and transfer the certificates or other evidence of shares so contracted for.

The judge also instructed the jury, without objection by the defendant, in substance, that the plaintiff could recover for the amounts paid and expenses incurred on his stock contracts made by him as agent of the defendant, without showing affirmatively that the parties with whom he contracted were the owners of the stock at the time the contracts were made; that the plaintiff was bound only to use reasonable diligence in ascertaining whether there was any defect in the contracts which he made with others at the request of the defendant.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions to the ruling as to the burden of proof.

*J. L. Eldridge & F. R. Hall*, for the defendant.

*H. L. Harding*, for the plaintiff.

HOLMES, J. The plaintiff's case is that he made certain stock contracts by order of the defendant, and that, in further pursuance of the same order, he paid the sums which he now seeks to

recover in settlement of those contracts. If the ruling that the burden was on the defendant to show that the contracts were illegal and void could reasonably have been understood to have any bearing on the question of the plaintiff's authority to pay as he did, it might have misled the jury. For, so far as the plaintiff relied on the defendant's order to make the contracts as containing in itself an implied request to settle them, on the ground that, by the well-known usage of brokers, they purported to bind him personally, the burden lay on him to prove that the order contemplated the contracts which he made, either by proving that it extended to invalid transactions, or that he made valid purchases of stock.

But we cannot assume, in favor of the excepting party, that this question was within the scope of the ruling, and it seems to us clear that the instruction was addressed, and must have been understood to be addressed, to a wholly different point. The ruling proceeds on the assumption, evidently concurred in by the counsel on each side, that, if the contracts fell within the Pub. Sts. *c.* 78, § 6, they were illegal; and that the plaintiff could not recover, even if it were admitted that they were made by the defendant's authority. The only question dealt with was the burden of proving that supposed defence.

If the contracts were illegal, we incline to think that the ruling, thus interpreted, was right on principle. The plaintiff did not sue upon those contracts. His cause of action was a debt springing from the facts that the defendant had requested him to pay money, and that he had paid it. If these facts were proved, and the defendant desired to destroy their effect by showing that they were part of an illegal scheme, it would seem to lie upon him to prove the additional facts necessary to establish that conclusion.

We think, however, that the contracts were not illegal, even if they fell within the statute; and if this be so, it was totally immaterial, for the purposes of defence, as distinguished from the question of the plaintiff's authority, whether they fell within the statute or not. The Pub. Sts. *c.* 78, § 6, make certain stockjobbing contracts void, but that is all. The language goes no further than that of the next preceding section, taken from the statute of frauds touching the sale of goods, wares, or

merchandise; we see no reason for giving it a greater effect. It deprives the contracts mentioned of the protection of the law, but it does not punish or forbid the performance of them. It is perfectly lawful to keep a promise which is merely void, or to advance money in aid of keeping one; and money advanced for that purpose at the request of the promisor can be recovered from him. The contract on which the plaintiff sues is not the contract against which the statute is directed, and the later Massachusetts decisions have gone far towards establishing his right to recover. *Durant* v. *Burt*, 98 Mass. 161, 167. *Brown* v. *Phelps*, 103 Mass. 313. Our view is confirmed by the reasoning and conclusion of the English cases. *Rosewarne* v. *Billing*, 15 C. B. (N. S.) 316, and *Ex parte Pyke*, 8 Ch. D. 754, which seem to us sound. See also *Beeston* v. *Beeston*, 1 Ex. D. 13.

The New York statutes expressly enact that money paid by way of difference may be recovered, and decisions under it are inapplicable here. *Staples* v. *Gould*, 5 Seld. 520.

It follows from what we have said that the defendant cannot complain of having had the burden thrown upon him of proving a fact, which, if proved, would have been no defence.

It is unnecessary to consider how the correctness of this ruling would have been affected by the defendant's claiming the right to hold the plaintiff to his own testimony, and insisting that by that testimony the contracts which he made were wagers, and void. For, as far as we can see, both parties have assumed throughout that the plaintiff was at liberty to take any position sustained by any of the evidence. And the bill of exceptions, not being directed to this point, does not set forth the plaintiff's testimony with sufficient exactness to make it safe for us to act upon the view of it which we have suggested.

*Exceptions overruled.*