MARK A. BLAISDELL *vs.* HONORA AHERN & another.

Suffolk.    Jan. 20. — May 7, 1887.    HOLMES & GARDNER, JJ.,
absent.

B., who was a domestic servant and had no means except her wages, hearing that her father, who had been a stranger to his family for years, had died in another State, leaving property there, consulted A., an attorney at law, in regard to recovering it, and gave him a power of attorney to collect her share of it. A. orally agreed with her to take charge of her case upon the terms that she should furnish money for all actual expenses, and that, in the event of success, he should charge more for his services than if he was sure of his pay in the outset; and A. rendered services under this agreement. Subsequently, a written agreement was signed by B., which recited that she had retained A. and authorized him to retain counsel in the other State, and that "said counsel and attorney are to depend upon the contingency of success for the fees for all services rendered" in the case; agreed that A. and the counsel so employed "shall in view of the uncertainty of the result in their payment be entitled to very large and liberal fees, in no event to exceed fifty per cent of the amount collected by them." Afterwards B., without notice to A., employed other counsel, and, on trial, recovered a certain sum. *Held*, in an action by A. against B. to recover for his services, that the contract under which they were rendered was not void for champerty or maintenance.

W. ALLEN, J. This is an action by an attorney at law to recover for professional services. The only question argued is, whether the services were rendered under a contract illegal for champerty or maintenance, so that no compensation can be re- covered for them.

The parties were residents of this Commonwealth. The de- fendants were children of a father who had been a stranger to his family for years. They earned their living as domestic ser- vants, and one or both of them had lived in the family of which the plaintiff was a member, and had known him from boyhood. They heard that their father had died in New Hampshire, leav- ing property there, and consulted the plaintiff in regard to recov- ering it, and gave him a power of attorney to collect their shares of it. They had no means except their earnings, and were un- able to defray the expense of legal proceedings. The plaintiff orally agreed with them to take charge of their case upon the terms that they should furnish money for all actual expenses, and that, in the event of success, he should charge more for his services than if he was sure of his pay in the outset. The plain- tiff rendered services under this agreement.

The defendants' case was tried in the Probate Court in New Hampshire, and a decision rendered adverse to them, and an ap- peal was taken to the Supreme Court. Pending this appeal, there was some difference between the defendants and the counsel em- ployed in New Hampshire, and he withdrew from the case, but was persuaded by the plaintiff to return; and, in consequence, a written agreement was signed by the defendants, which recited that they had retained the plaintiff and authorized him to retain counsel in New Hampshire, and that " said counsel and attorney are to depend upon the contingency of success for the fees for all services rendered in and about said prosecution." The contract also contained the agreement that the plaintiff and the counsel employed " shall in view of the uncertainty of the result in their payment be entitled to very large and liberal fees, in no event to exceed fifty per cent of the amount collected by them, and that we [the defendants] will furnish all the evidence and pay all the actual costs in the prosecution of said claims." The defend- ants afterward, without notice to the plaintiff, employed other counsel, and, on trial, recovered $9300.

According to the terms of this agreement, the plaintiff could unquestionably have maintained an action against the defendants for his fees, if successful in the suit. In that event, he "is to be entitled to very large and liberal fees," for which he would have a right of action against the defendants. This is inconsistent with a champertous agreement, an essential element of which is a sharing in the fruits of the litigation. There was no agreement that the plaintiff should receive a share of the amount recovered as compensation for his services. It is immaterial that the avails of the suit were the means or the security on which he relied for payment, if it was to be payment of a debt due from the defendants. *Thurston* v. *Percival*, 1 Pick. 415. *Lathrop* v. *Amherst Bank*, 9 Met. 489.

*Ackert* v. *Barker*, 131 Mass. 436, and *Belding* v. *Smythe*, 138 Mass. 530, are cases of champerty, where a part of the amount recovered was to be received in compensation for services, and there was to be no personal liability. Where the right to compensation is not confined to an interest in the thing recovered, but gives a right of action against the party, though pledging the avails of the suit, or a part of them, as security for payment, the agreement is not champertous. *Tapley* v. *Coffin*, 12 Gray, 420. *Scott* v. *Harmon*, 109 Mass. 237. *McPherson* v. *Cox*, 96 U. S. 404. *Christie* v. *Sawyer*, 44 N. H. 298. *Anderson* v. *Radcliffe*, E., B. & E. 806, 817.

We do not see anything in the agreement which renders it void for maintenance. In a sense, a lawyer may be said to maintain another in a suit when he gives his advice or services, as formerly it would have been maintenance for a layman to do so; but such acts have long since ceased to be unlawful, and it would now nowhere be held to be in itself unlawful for a lawyer to give his services to prosecute a suit, with the understanding that his services are to be free unless success shall give to his client the ability to pay him, and that in that case he will expect liberal fees. There may be circumstances in which such a contract would be meritorious; and there may be circumstances in which it would partake of the worst evils of maintenance. Under what circumstances a contract of that nature might be held void as against public policy, we need not consider. The contract under consideration was nothing more than an agreement

by the plaintiff to give his services without charge if the suit should not be successful, and an agreement by the defendants to pay large and liberal fees if successful; and we know no authority and no reason in public policy why, under the relations and circumstances of the parties, it was not a lawful contract, which they had a right to enter into. We think that the ruling, as matter of law, that the action could not be maintained, was wrong.                    ·            *New trial granted.*

J. L. *Thorndike,* (*N.. Morse* with him,) for the plaintiff.
J. *Bennett,* (*E. O. Cooke* with him,) for the defendants.