ALEXENE L. HADLOCK, administratrix, *vs.* WILLIAM GRAY BROOKS.

JOHN F. MERROW *vs.* SAME.

Suffolk.    November 16, 19, 1900. — April 3, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

An agreement that an attorney undertaking to prosecute a suit shall have a share of the thing recovered may not be champertous. In order to make it so, the bargain must contain the further element that the attorney's services shall not create a debt due to him from his client and that his prospective share shall be his only compensation.

There may be circumstances under which an attorney lawfully may agree to give his services to prosecute a suit without charge if unsuccessful and that in case of success and not otherwise his fees shall constitute a debt due to him from his client for which the amount recovered in the suit or a part of it shall be security.

The defence of champerty to an action by an attorney for his fees is matter in confession and avoidance and the burden is on the defendant to prove it.

Declarations made by a person afterwards appointed administrator of an estate are not admissible after his appointment as admissions against the estate.

A., having a claim against B. for compensation for services, gave to C. an order on B. for a part of the claim, which was accepted by B. A. died, and D., an attorney, was employed by his administrator to collect from B. the balance of the claim. D. was also employed by C. to collect the order. A certain sum by way of part payment for the services of A. was paid to D. the attorney, and a release for the amount paid was given by the administrator of A. This was without the knowledge of C. Later C. sued B. on the order, and B. contended that as D. was attorney for C. when the part payment was made to him, such part payment should be credited on the order. *Held,* that although D. was attorney for C. the part payment was made to him not in that capacity but as attorney for the administrator of A. and that he could not apply the payment to the claim of his other client, and that the administrator owed no duty to B. to see that the order accepted by B. was paid.

An order was given and accepted as follows: "J. S. Esq., Administrator of A. B. deceased, and Solicitor of the children of said A. B.: Please pay to X. the sum of $3,000 when the final distribution is made of the sum due by virtue of [a certain decree in a suit named] and charge the same to my account. C. D." "The foregoing order is hereby accepted. J. S., Administrator and Solicitor." There was no evidence that the children of A. B. knew of the order or authorized J. S. to accept it. *Held,* that the order and acceptance bound J. S. per-

sonally. *Held, also,* that the facts, that J. S. was administrator of the estate of A. B. and solicitor for the children, and that there was no money of the estate or of the children in prospect with which to pay the 'order except what was received under the decree named, did not create an ambiguity which made it necessary to leave the meaning of the contract to the jury. *Held, also,* that the "final distribution" on which the order was payable meant the time of the final entry of the decree ordering the distribution of the whole fund, and not the time when the last dollar of the fund actually should have come to the hands of the person entitled to it.

TWO ACTIONS OF CONTRACT, the first brought by the administratrix of the estate of Harvey D. Hadlock, deceased, to recover a balance alleged to be due from the defendant for services rendered by the plaintiff's intestate as an attorney at law, in behalf of the descendants of Henry Gray in the case of *Codman* v. *Brooks,* reported in 159 Mass. 477, and 167 Mass. 499, and the second brought by John F. Merrow, to recover the amount of an order for $3,000, made by said Harvey D. Hadlock and accepted by the defendant. Writs dated June 14, 1898.

The cases were tried together in the Superior Court, before *Lawton,* J. In the first case the plaintiff sought to recover on the ground that by the terms of his employment Harvey D. Hadlock was to and did render the services mentioned on the credit of the defendant, and that soon after the decision reported in 167 Mass. 499, the amount of Hadlock's compensation was settled upon and fixed by him and the defendant at $8,000, and that the defendant agreed with Hadlock to pay it.

The defendant contended that he had employed Hadlock on behalf and on the credit of the ten children of Henry Gray, who claimed to share in the fund involved in the litigation in *Codman* v. *Brooks,* and that Hadlock's services in that case were rendered solely on their credit; also that the services were rendered under a champertous and illegal agreement. He denied that he had settled upon $8,000 or any other sum as Hadlock's fee, or that he had agreed to pay that or any specific sum.

It appeared that the defendant was counsel in the case of *Codman* v. *Brooks* for the ten children of Henry Gray, a deceased son of William Gray, the elder, the original sufferer, for the loss of whose ships through French privateers Congress had appropriated the fund in controversy in that case, held by Robert Codman as administrator of the estate of William Gray.

Before 1893 the defendant had been appointed administrator *de bonis non* of the estate of Henry Gray, and had associated with him as senior counsel in that case the late Benjamin F. Butler. Shortly after General Butler's death, which occurred in January, 1893, the defendant employed as his associate counsel Harvey D. Hadlock, who continued in the case until its final determination. Hadlock died in the latter part of April, 1897.

The plaintiff called as a witness John F. Merrow, who testified that in the latter part of February, or the first part of March, 1897, he had a conversation with the defendant and Hadlock, in which they both told him that the case of *Codman* v. *Brooks* had been finally determined in the Supreme Judicial Court of Massachusetts, and that they had settled on the amount that Hadlock was to receive, and agreed on the sum of $8,000. He also testified that on other occasions after February 22, 1897, both the defendant and Hadlock told him that they had agreed upon the amount of Hadlock's compensation as $8,000. The plaintiff introduced the testimony of one Greene, a former clerk of Merrow, to the same effect as that of Merrow.

As further tending to show that Hadlock had given credit to the defendant for his services in *Codman* v. *Brooks*, and that the amount of his compensation had been fixed at $8,000, the plaintiff introduced in evidence the specifications under the declarations in six suits brought by the defendant severally against six of the children of Henry Gray to recover for services rendered and furnished by him in the case of *Codman* v. *Brooks*. In each of these cases there was a specification of one tenth of the services of Hadlock in the case of *Codman* v. *Brooks*, as furnished by the defendant, fixing the value of such tenth at $800.

The defendant introduced evidence tending to show that he had authority from the ten children of Henry Gray to employ Hadlock in the case of *Codman* v. *Brooks*, on their behalf, and that Hadlock looked to them and not to the defendant as liable to him for his fees.

The substance of the evidence in regard to the terms of Hadlock's employment alleged by the defendant to be champertous and the contentions of the parties on this issue appear in the opinion of the court.

The order and acceptance sued upon in the second case were as follows: " Boston, June 2, 1896. William Gray Brooks, Esq., Administrator of Henry Gray, deceased, and Solicitor of the children of said Henry Gray: Please pay to the order of John F. Merrow & Co. the sum of three thousand dollars when the final distribution is made of the sum due by virtue of an opinion of the Supreme Court of the United States, and in accordance with a mandate directed to the Supreme Judicial Court of the Commonwealth of Massachusetts within and for the county of Suffolk in the case of William Gray Brooks, *Admr. et al. v.* Robert Codman, *Admr. et al.,* and charge the same to my account. Harvey D. Hadlock."

" The foregoing order is hereby accepted. William Gray Brooks, Administrator and Solicitor."

The case of *William Gray Brooks, Admr. et al.* v. *Robert Codman, Admr. et al.,* mentioned in the order, is the same case reported in 159 Mass. 477, and 167 Mass. 499, under the name of *Codman* v. *Brooks.*

The defendant was as stated above administrator *de bonis non* of the estate of Henry Gray, named in the order, and in the case of *Codman* v. *Brooks* was solicitor for the ten children of Henry Gray, who were entitled to share in the fund referred to in the order.

When this action was brought, distribution of the entire sum referred to in the order had been made, except of the shares which at the date of the order were due to Charles R. Gray and Frederick W. Gray, two of the children of Henry Gray, which were held by Robert Codman as administrator of the estate of William Gray, the elder.

The plaintiff maintained that he was entitled to recover, although these two shares had not been distributed, because he alleged that their distribution had been prevented by the defendant, and that the defendant had subsequently to the acceptance of the order agreed for a valuable consideration to pay the amount of the order at all events.

The defendant contended, that the order was an assignment of so much of the fund belonging to the children of Henry Gray as on final distribution might come into his hands as administrator of the estate of Henry Gray, or as solicitor of his chil-

dren, and not an undertaking by him to pay anything beyond what he so received in his representative capacity. He also contended that the order was given for the purpose of securing to the plaintiff payment of a part of the compensation which Harvey D. Hadlock was to receive for services as counsel in the case of *Codman* v. *Brooks*, rendered under a champertous and illegal agreement of which the plaintiff had knowledge. He denied that he had prevented the distribution of the two shares, and contended that he had done all in his power to collect them under assignments to him, but had been prevented from doing so.

The plaintiff introduced in evidence copies of assignments from Charles R. Gray and Frederick W. Gray to the defendant. The defendant, called by the plaintiff as a witness, testified that he took assignments of two of the ten shares of the award and that the two papers were accurate copies of these assignments; and that the assignors were two of the children of Henry Gray. The assignments were dated July 7, 1896, after the decision of the Supreme Court of the United States.

It appeared that the six suits brought by the defendant against six of the ten children of Henry Gray, in which he sought to recover from each of them one tenth of the fees of Hadlock for services in *Codman* v. *Brooks*, as well as one tenth of his own fees for services in that case, were settled in May, 1898, by the payment of $5,500.

The defendants in those cases, before settlement, insisted upon a release by the administratrix of Hadlock, then deceased. A release was accordingly given, and $1,000 of the $5,500 was paid to Mr. Sampson, then acting as attorney for the administratrix, and who was also at that time the attorney for John F. Merrow, the present plaintiff, for the collection of the order here sued upon. Merrow personally knew nothing of the settlement of these six cases or of the payment of the $1,000 to Mr. Sampson until after the settlement and payment were made and was not consulted about it in any way.

The other material evidence in the two cases, the rulings asked for and the instructions given are all stated in the opinion of the court.

The jury found for the plaintiff in the first case in the sum of $2,850 and in the second case in the sum of $3,000; and the

defendant alleged exceptions in both cases which are stated in the opinion of the court.

*J. S. Patton*, (*W. G. Brooks* with him,) for the defendant.

*C. P. Sampson*, for the plaintiffs.

BARKER, J.   In each of these cases, tried together before the Superior Court with a jury, there was question whether Hadlock, who acted as senior counsel for the children of Henry Gray in the case of *Codman* v. *Brooks*, reported in 159 Mass. 477, and 167 Mass. 499, was employed under a champertous agreement.

The defendant's evidence tended to show that by the terms of Hadlock's employment his compensation was to be a percentage of whatever sum should be recovered by his clients in the litigation, and also that it was to be contingent upon their success in securing such a recovery in the action.

In the case brought by Hadlock's administratrix, the defendant Brooks in substance asked the court to rule, that if he employed Hadlock as counsel in the case of *Codman* v. *Brooks* under an agreement by the terms of which Hadlock's fees and compensation were contingent upon the recovery of some part of the money held by Codman and were to be paid out of the fund so recovered, the agreement was illegal and that Hadlock was not entitled to any compensation for any services rendered thereunder.

In the case brought by Merrow the defendant Brooks asked the court to rule that if Hadlock made an agreement with the defendant Brooks, or those he represented, to render legal services in the case named, on condition that his compensation was to be paid out of the fund recovered, the agreement was illegal and void, and that if Merrow knew the nature of the agreement, and the order sued on was given and accepted for the purpose of securing to Merrow payment of such compensation or a part thereof, Merrow could not recover.

The court declined to give these requests and gave the following as an instruction applicable to both cases :

" He " (the defendant) " says that the contract which took place was champertous, and therefore illegal, and therefore a void contract, and no contract at all.   What is the meaning of a champertous contract?   It is this : If in the assumed case

of you going to a lawyer to hire him to take a certain case, you said to him, ' I have n't any money, and unless I win this case I sha'n't have any money to pay you. Will you take this case, charge me either a certain percentage, or such amount as you think best, if you win the case ; and if you lose the case, charge me nothing ' ; that is a champertous contract ; that is an illegal contract and is a void contract. There are contracts that look a great deal like it upon the face of it that are not void ; that is, are not champertous. It is competent for the parties to say, ' I have no money and I can't pay you until I get the verdict.' If they stop there, if they simply make it a question of the time of payment, it is perfectly competent. It is perfectly competent for the client to say, and the lawyer to agree to it, ' I will pay you, if you are successful, a quarter of what you recover ' ; if they don't add the further condition, ' Nothing if you don't recover.' Or, in other words, to put it in brief, if they make the payment of any fee at all contingent on the success, that is a champertous contract ; but any other kind of a contract they may make ; and there are infinite varieties of it, and there are infinite ways in which they may make the size of the fee depend upon the result, and they may make the time of payment dependent upon the result, etc."

In the Merrow case the jury were further instructed as follows :

" The defendant says that the original contract upon which this was based was a champertous, illegal and void contract, and that therefore this contract being made by the parties, and by a man who knew that the contract was champertous, illegal and void, is in itself void. To put it another way : That this contract being based upon a void contract is in itself void ; and that I instruct you is true. If you find that the contract in the first place was champertous, as I have described it, that is to say, if you find that it was a contract such as I have described as champertous — and you find that Mr. Merrow knew the facts about the contract, then this contract is itself void. But bear in mind this thought : That Mr. Merrow may not have ever heard the word champertous ; Mr. Merrow very likely never did ; Mr. Merrow may not have known that it was illegal ; the point is, was the contract a contract whereby Mr. Hadlock was to receive

nothing if unsuccessful, and receive a considerable fee if successful, and did Mr. Merrow know of these facts?"

As between an attorney at law and his client it is of the essence of champerty that the attorney, having no previous interest to justify him, upon recovery is to have as his own some part of the thing recovered, or some profit out of it. *Thurston* v. *Percival,* 1 Pick. 415. *Lathrop* v. *Amherst Bank,* 9 Met. 489. *Lancy* v. *Havender,* 146 Mass. 615. But an agreement that one not previously interested and who agrees to prosecute a suit, upon recovery shall have a share of the thing recovered is not for that reason alone champertous. The bargain to be illegal must have the further element that the attorney's services shall not constitute a debt due him from the client, and that his prospective share is to be the only compensation which the attorney shall receive. If in effect he "agreed to look for his compensation to that alone which might be recovered, and thus to make his pay depend upon his success" the bargain is champertous and void. *Ackert* v. *Barker,* 131 Mass. 436, 438. "Where the right to compensation is not confined to an interest in the thing recovered, but gives a right of action against the party," the agreement is not champertous. *Blaisdell* v. *Ahern,* 144 Mass. 393, 395. See *Scott* v. *Harmon,* 109 Mass. 237.

But the contract may be illegal without stipulating in terms that compensation is to be solely by way of an interest in the thing to be recovered. That element of illegality may be inferred from an agreement to prosecute at one's own expense and risk unless successful. *Belding* v. *Smythe,* 138 Mass. 530. See *Williams* v. *Fowle,* 132 Mass. 385, 388. As was held in *Blaisdell* v. *Ahern,* there may be circumstances in which the attorney may lawfully agree to give his services without charge, if the suit should not be successful, and if in case of success, and not otherwise, the attorney's fees are to constitute a debt due from the client and give a right of action against him to recover them, so that the attorney's right is not confined to an interest in the thing recovered, it is immaterial that the avails of the suit or a part of them are pledged as security, or that such avails are the means and the security on which the attorney relies for payment. And as was also said in *Blaisdell* v. *Ahern,* there may be circumstances in which an agreement by an attorney to give his ser-

vices in the prosecution of a suit with the understanding that they are to be free unless the suit is successful may partake of the worst evils of maintenance.

In view of this statement of the law of champerty as it has been held by this court the instructions requested by the defendant were erroneous. The request in the case brought by the administratrix would require the jury to find champerty at all events if Hadlock's fees were to be contingent upon success and to be paid out of the fund recovered, whereas both of those things might concur and yet if there was a personal obligation upon his employer to pay his compensation his employment would be legal. The request in the other case would require the jury to find champerty at all events if Hadlock agreed to render his services on condition that his compensation was to be paid out of the fund recovered, whereas under many circumstances such a stipulation alone does not constitute champerty.

The exceptions to the refusal to give these requests must therefore be overruled.

The instructions given were colloquial in style, and evidently intended to enable the jury to decide correctly as to the precise controversy as it stood upon the evidence before them, rather than as a full exposition of the law of champerty as between an attorney and his employer. The plaintiff had introduced evidence tending to show that the defendant was acting as solicitor for the children of Henry Gray in the suit of *Codman* v. *Brooks,* and that upon the death of senior counsel, while the litigation was pending, the defendant had employed Hadlock as his senior counsel ; that Hadlock had rendered professional services in the cause, and that after a determination in favor of his clients in it by the Supreme Court of the United States, it had been agreed between the defendant and Hadlock that the compensation of the latter should be the sum of $8,000. On the other hand the defendant had himself testified that at the time of engaging Hadlock the defendant told him that he, the defendant, had no money, and the heirs had no money to pay lawyers, and that if Hadlock was contented to go into the case contingent upon its success, and to be paid out of the sums recovered, the defendant would like to have him ; that Hadlock said he would do so, and that the defendant said to

Hadlock " If I am successful in getting my claim, in getting my fees, you shall be paid what your services are worth." The defendant had testified further that afterwards Hadlock made claim to twenty-five per cent, to which the defendant did not agree; also that both agreed that the amount of compensation was to be contingent and to come out of the fund, Hadlock claiming that it was to be twenty-five per cent, and the defendant that it should be what was reasonable; but that in any event Hadlock and himself were to receive compensation out of the sum recovered, if any.   On the same subject Merrow testified that Hadlock told him that the defendant agreed to give him twenty-five per cent of it, if he won it, and that the inducement held out was that he, Hadlock, was to have twenty-five per cent of the amount recovered for the parties whom he represented.   Another witness called for the defendant testified that Hadlock said he was going to get $15,000 based on twenty-five per cent, and that Brooks did not owe him anything, that the heirs owed him.

Upon this situation of the evidence it was not necessary for the court after refusing the defendant's requests to give the jury an exhaustive statement of the law of champerty; and if the instruction given contained no erroneous statement prejudicial to the defendant his general exception to this portion of the charge must be overruled.   Construing the instruction in view of the state of the evidence upon which the defendant relied to show champerty in Hadlock's employment, we think it was not erroneous in any point prejudicial to the defendant.   On the other hand it left the jury free to find champerty if Hadlock ·was to receive nothing if unsuccessful and a considerable fee if successful, although they might also find in accordance with the defendant's own testimony that he had himself agreed with Hadlock that if the defendant was successful Hadlock should be paid what his services were worth, that in case of success there was a personal obligation upon the defendant to pay Hadlock the worth of his services.   Accordingly the defendant's exceptions to those portions of the charge which dealt with champerty are overruled.

There was evidence tending to show that at some time after Hadlock's original employment he and the defendant agreed

that Hadlock's compensation for services should be the sum of $8,000. In view of this the defendant asked for an instruction that if the compensation was contingent upon success and was to come out of the fund recovered any subsequent agreement after the services were performed to pay a fixed sum therefor was not binding upon the defendant. The instruction given upon the subject of this request said that if the contract was champertous in the first place the plaintiff could not recover. This covered the request in a way sufficiently favorable to the defendant. But he contends in support of his exception to the whole portion of the charge upon the agreement to pay the fixed sum, first that it was a charge upon the facts, and next that it contained a wrong rule that the burden of proof was upon the defendant to establish the champerty.

Neither of these grounds for the defendant's exception is shown to have been called to the attention of the court at the trial. The first is not supported by an examination of this part of the charge. All that the court did was to call the attention of the jury to the contention of the plaintiff that the original hiring was not champertous, and this was not improper.

Considering the state of the pleadings and the circumstances of the trial we think the exception to the ruling as to the burden of proof must be overruled. Two cases were upon trial together. In one the declaration was upon an order payable upon a contingency drawn by Hadlock and accepted by the defendant, with a second count alleging that after the order was given the defendant for a valuable consideration promised the plaintiff to pay him the amount of the order at all events. In the other case the declaration was in account the debit charge against the defendant being for $8,000 for professional services rendered by Hadlock in the litigation named " being the compensation for said services agreed upon by the defendant with " him. In that case the answer was a denial of all the plaintiff's allegations, and also a plea of payment, and a plea of Pub. Sts. c. 78, § 1. In the action upon the order, the defendant, besides a denial of all allegations not specifically admitted, admitted that as administrator he employed Hadlock in the litigation mentioned, but denied all personal liability, alleged that the order was accepted upon condition that the defendant was not

to be personally liable, alleged that the services were of no value, that they had been fully paid for, and also set up Pub. Sts. c. 78, § 1.

In neither case did the answer allege that Hadlock's employment was champertous or state any fact from which that result would follow, nor did the plaintiff introduce any evidence upon which it could be contended that Hadlock's employment was champertous. The defendant thus came to the trial admitting that he had employed Hadlock in the litigation and contending among other defences that the plaintiffs could not recover because the agreement for Hadlock's employment was champertous. In substance this defence was a confession and avoidance, and like payment and other such defences must be proved or fail. The fact that the defendant was allowed to attempt to prove it without having set forth in his answer in clear and precise terms the substantive facts upon which he intended to rely in avoidance of the obligation flowing from the admitted employment of Hadlock, gave the defendant no greater right than if his pleadings had conformed to the provisions of Pub. Sts. c. 167, § 20. That there was champerty was a matter which he asserted as a defence and which for that reason he must be required to prove. *Jones* v. *Ames*, 135 Mass. 431.

In the case brought by Hadlock's administratrix there was an exception to the refusal of the court to allow one of the defendant's witnesses to testify to a conversation had between the witness and the defendant. The bill of exceptions does not state what the conversation was, but if we assume in favor of the defendant that it tended to prove an admission made by Mrs. Hadlock before she was finally made administratrix and when she was not clothed with any representative capacity, such an admission could not be put in evidence. Her subsequent appointment as administratrix did not have the effect by relation to make her declarations previously made competent as admissions, they not being acts of administration. This exception must be overruled. The exception in the same case to the refusal to give three instructions, based upon the contention that Hadlock's employment was upon the credit of the children of Henry Gray and not upon that of the defendant, has not been argued and we treat it as waived.

The defendant is not shown to have disclosed at the trial upon what ground he based his request to direct a verdict in his favor. He now contends that by reason of an order which there was evidence tending to show had been given by Hadlock to his wife and a letter written by the wife to the defendant Hadlock had deprived himself of any right to compensation and could not agree upon its amount. It is enough to say upon this exception that the bill of exceptions does not purport to state all the evidence, and that nothing which it does state would require the court to order a verdict for the defendant.

The order declared on by Merrow in his case was conceded to be on account of the compensation to be received by Hadlock for his services in the case of *Codman* v. *Brooks*, and is expressed to be payable " when the final distribution is made " of the sum due by virtue of an opinion of the Supreme Court of the United States. It was addressed to " William Gray Brooks, Esq., Administrator of Henry Gray, deceased, and Solicitor of the children of said Henry Gray." The acceptance is in these words : " The foregoing order is hereby accepted. William Gray Brooks, Administrator and Solicitor." The defendant was administrator of the estate of Henry Gray and was also solicitor in the case of *Codman* v. *Brooks* for the children of Henry Gray, and they were entitled to share in the fund or sum to be distributed mentioned in the order.

The first of the exceptions stated in the bill in this case is to a refusal to rule that the order was not a bill of exchange, but a simple agreement to pay money upon the happening of an uncertain event. The instruction requested was immaterial, and the court was therefore justified in refusing to give it.

The second request stated in the same bill was upon the theory that the order and acceptance were not an undertaking to pay anything beyond what the defendant should receive upon the distribution mentioned in the order in his capacities as administrator and as solicitor for the children of Henry Gray. The court refused so to rule and instructed the jury that by the contract the defendant personally agreed to pay Merrow the sum of $3,000 when the money should be distributed.

The order is addressed to the defendant by his name with these additions : " Esq., Administrator of Henry Gray, de-

ceased, and Solicitor of the children of said Henry Gray."
Its acceptance was by the signature of the defendant, with the
addition merely of the words " Administrator and Solicitor."
There is no expression of an intention to bind the estate or the
children. There was no evidence tending to show that the
children knew of the order or authorized the defendant to
accept it.

The defendant had as solicitor no power to bind his clients
by the acceptance of an order, and as administrator he had no
power to bind the estate by such an acceptance. The form of
acceptance does not purport to bind either the children or the
estate, and there was no evidence that the defendant in fact
intended to bind either the children or the estate. These cir-
cumstances distinguish the case from that of *Grafton National
Bank* v. *Wing,* 172 Mass. 513, in which the executor purported
to bind the estate by the form of his indorsement, and claimed
that he had the right to bind it, and so was held not to have
bound himself personally. We think therefore that the order
and acceptance must be construed to bind the defendant per-
sonally, and that upon the evidence the court was right in so
instructing the jury. The facts that the defendant was admin-
istrator of the estate and solicitor for the children, and that
there was no money of the estate or of the children in prospect
with which to pay the order except what was to be received in
the litigation mentioned did not create an ambiguity which
made it necessary to leave the meaning of the contract to the
jury. See *Shoe & Leather National Bank* v. *Dix,* 123 Mass.
148.

The third request in the Merrow case brought up the subject
of champerty in the employment of Hadlock, and of the effect
of that champerty upon the validity of the order. The instruc-
tions as to whether Hadlock's employment was or was not cham-
pertous have been dealt with in considering the case brought by
his administratrix. After those instructions the jury were told
in substance that if Hadlock's employment was champertous,
and this was known to Merrow, the contract made on the order
and acceptance was void. This was sufficiently favorable to
the defendant. The ruling in this connection that the burden
was upon the defendant to establish this defence of illegality in

the order and the acceptance was right, for the reasons stated in connection with the similar ruling in the case of the administratrix.

It appeared at the trial that after the giving of the order a payment had been made by six of the children of Henry Gray upon the settlement of suits brought by the defendant against them, in which suits the defendant sought to recover of them severally one tenth of the fees of Hadlock for his services in the case of *Codman* v. *Brooks*, as well as for one tenth of the defendant's own services in that litigation. These payments were made in May, 1898, and amounted to $5,500. Before the settlement the children insisted upon a release from the administratrix of the estate of Hadlock, which was given upon the payment of $1,000, part of the $5,500, to Sampson the attorney for the administratrix, who was then also the attorney for Merrow for the collection of the order now in suit. Merrow knew nothing of the settlement or the payment of the $1,000 to Sampson, and received no part of the money.

In this connection the defendant asked the court to instruct the jury that if when Sampson received the $1,000 he was Merrow's attorney to collect the order, and knew that the order was drawn on the fees to become due to Hadlock, the $1,000 should be credited on the order. The court refused this instruction, and it being conceded that there was no evidence that Merrow knew that the payment was to be made, nor that he assented thereto, instructed the jury that the $1,000 could not be credited upon the order. The refusal to instruct and the instruction were excepted to by the defendant. These exceptions must be overruled. Although Sampson was an attorney for Merrow the payment was not made to him in that capacity, but to him as attorney for the administratrix, who as well as Merrow had a right in the amount due on account of Hadlock's services. Sampson could not apply the payment made to him as attorney of the administratrix to his other client, nor was the administratrix bound to the defendant to see that the order accepted by him was paid.

The order given by Hadlock to Merrow was to pay " when the final distribution is made of the sum due by virtue of an opinion of the Supreme Court of the United States, and in

accordance with a mandate directed to the Supreme Judicial Court of the Commonwealth of Massachusetts within and for the county of Suffolk in the case of William Gray Brooks, *Admr.*, *et al.*, *v.* Robert Codman, *Admr.*, *et al.*" The order was dated June 2, 1896, which was after the decision of *Brooks* v. *Codman*, 162 U. S. 439, in pursuance of which the mandate mentioned in the order was given and before the final decision of the case reported in 167 Mass. 499. By that final decision, rendered on February 23, 1897, it was ordered that the money in the hands of Codman for distribution be divided into twenty-three equal shares " of which one will be given to each of the surviving grandchildren and one to the children of each of the deceased grandchildren."

Hadlock and the defendant were concerned only with the ten of the twenty-three shares, which by force of the decision and order were to be given to the ten children of Henry Gray for whom Hadlock and the defendant acted in the Codman suit. When the Merrow action was commenced eight of the ten shares had been paid over in accordance with the final decision, but the two shares due to Charles R. and Frederick W. Gray, children of Henry Gray, were then and also at the date of the trial still held by Codman. It appeared that after the giving of the order to Merrow the defendant on July 7, 1896, had procured from each of these two of his clients an assignment of the clients' share of the fund in litigation. It also appeared from the defendant's testimony that in July, 1896, Charles R. Gray was over seventy-four years of age and Frederick W. Gray over seventy-one, and that when they made the assignments and for a long time before both lived in an asylum for the cure of mental trouble, and that after the date of the assignments guardians were appointed for each. It also appeared that in July, 1897, Codman had a decree of distribution ordering payment, that the defendant had notified Codman of the two assignments and that the defendant would claim those two shares and would bring suit against Codman for them, and that such suit had been brought by the defendant and a suit brought by the guardian to dismiss that suit, and that also suits were pending to declare the assignments invalid, and that the two shares were tied up by litigation.

Upon this evidence the defendant requested the court to instruct the jury, as follows:

"'Final distribution,' mentioned in said order, means distribution of the entire sum due to all the ten children of Henry Gray, and the plaintiff cannot recover unless he proves that such a distribution has been made." The court refused and instructed the jury that if the only reason why the distribution had not been completed was the act of the defendant himself the plaintiff could recover.

We do not give to the order the construction for which the defendant contends. When the order was drawn Hadlock, the defendant and Merrow all knew that the right of the children of Henry Gray to share in the fund, the distribution of which was in litigation in the case of *Codman* v. *Brooks*, was established by the decision of the Supreme Court of the United States, and that their proportions of the fund would be determined by a decree of distribution to be entered in the cause in accordance with the mandate referred to in the order. The words "the sum due by virtue of an opinion," etc., the "final distribution" of which sum is made by the language of the order its time of payment, is not the sum coming to the clients of Hadlock and the defendant but the whole fund appropriated by Congress for the losses of William Gray the elder, the distribution of which fund was the subject of the suit mentioned in the order. We think that the time of the final entry of a decree or order of distribution of that fund was the time of payment stipulated in the order, and not the time when the last dollar of the fund should actually come to the hands of a child of Henry Gray. The stipulated time of payment therefore arrived at the latest in July, 1897, when Codman obtained his final decree of distribution, long before the bringing of the Merrow suit in June, 1898. Under our construction of the order the instruction requested was wrong, and that given did the defendant no harm because the time stipulated for payment in the order had arrived before the bringing of the suit. We intimate no opinion as to the correctness of the instruction given.

Finally the defendant excepted to a refusal to order a verdict in his favor. He has asserted in his brief that such an order

should have been given but has not supported it by any argument. There was a count upon a promise to pay the order at all events and evidence in support of such a promise, and of a consideration therefor moving from Merrow. For this and other reasons such a direction could not have been given.

*Exceptions overruled.*