CHARLES A. MILLEN *vs.* TIMOTHY W. COAKLEY & others.

Suffolk. November 14, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Contract,* What constitutes, Validity. *Attorney at Law. Champerty.*

In an action against the members of a firm of attorneys at law to recover a certain compensation, alleged to have been agreed upon, for services in procuring evidence and in testifying as an expert, exceptions were sustained to the ordering of a verdict for the defendants, because the testimony of the plaintiff, although contradicted in all respects by the testimony of the defendants, would, if believed, in connection with other evidence, warrant findings that contracts substantially as alleged in the declaration were made in behalf of the defendants by an attorney at law employed in their office and afterwards were ratified by one of the defendants acting for all of them with full knowledge of the material circumstances, that the contracts thus made by the defendants were made by them in their personal capacity and not merely as the agents of their client, that the conditions under which the plaintiff was to be paid the stipulated sums had been fulfilled and that he was entitled to recover.

A contract made by a firm of attorneys at law, to pay a person $300 for lawfully procuring evidence to be used in a certain action and $50 a day for testifying in the action as an expert if a verdict of $1,500 or more is returned, is not champertous.

HAMMOND, J. This was an action of contract to recover for services alleged to have been rendered in procuring for the defendants, a firm of lawyers, evidence to be used by them in the trial of two cases, in each of which they were acting as counsel for one of the parties; and also for services as an expert witness in the same cases. At the close of the plaintiff's evidence the presiding judge* ordered a verdict for the defendants; and the case is before us upon exceptions taken by the plaintiff to this order as well as to the refusal of the judge to give certain rulings and to the exclusion of certain evidence.

The principal question is whether upon the evidence this case should have been sent to the jury. At the trial it appeared that the defendants were counsel for one Purcell, in two actions brought by her to recover for personal injuries, the defendants in which

---

* *Keating,* J.

were Edwin W. Wheeler and Clara A. Wheeler in the first action and the Revere Beach County Fair and Musical Railway Company in the second. The declarations were substantially the same, both actions being for recovery for the same injury. In the case against the Wheelers there was a verdict for Purcell for $6,500, "which was afterwards cut down to $4,000," and the case was finally settled for $2,500, which was paid to the defendants as attorneys for Purcell. In the second case the verdict was for the defendants.

Daniel H. Coakley, one of the defendants, testified that the two cases were tried by Mr. Flaherty, "an attorney in the defendants' office;" that he, the witness, "did not take any personal part in the actual preparation of" the cases, "but took part in the advisory preparation, and talked with the men who were in the office about what they should do;" that Mr. Johnson, an attorney in his office, was at first entrusted with the preparation of the case, but by reason of ill health he was obliged to leave the office, and then the preparation and trial were entrusted to Mr. Flaherty.

The plaintiff testified that some time in May, 1908, he went to the defendants' office and had a talk with Mr. Johnson in regard to procuring witnesses in the Wheeler case. As to this conversation he testified as follows: "He wanted to know if I could get the witnesses, or knew them, that knew about the accident, and I told him I thought I could. . . . I said I would want compensation if I got them. He said ' We would be glad to do that.' . . . And I told him . . . I would get the witnesses for $300. He said he would have to see Mr. Dan Coakley about that and he went through, towards Mr. Coakley's office and came back." A question as to what Mr. Johnson said when he returned was excluded. The plaintiff further testified that in consequence of this conversation he had various interviews with Mr. Johnson: "I would take in names of people and give them to him and he would put them down in a book. . . . I went and found people that were there and saw the accident. . . . I probably interviewed thirty or forty. I think I took eight different names to Mr. Johnson's office — eight different people that would testify in this case that saw the accident." He further testified somewhat in detail as to what at Mr. Johnson's request he did in getting

witnesses; and in addition that subsequently, when the cases came up in court, Mr. Flaherty from the defendants' office was there, and that Mr. Flaherty said the cases were to be nonsuited for want of witnesses; that he (the plaintiff) knew the witnesses, had talked with them all at the request of Mr. Johnson, and knew where they were; that, as the witness thought, Mr. Flaherty telephoned to the defendants' office and then went into court and the court said that if Mr. Flaherty would be ready to go on at two o'clock the case might not be nonsuited, "or something like that." That in the afternoon he went to Revere and saw two witnesses, and, as he thought, served the summonses given to him by Mr. Flaherty; that during the afternoon there was a conversation between him and Flaherty about an expert witness: "I said [asked] . . . if he required an expert in the case. And he said he would like to have one, and I told him I could pass, I thought, as an expert on high speed machinery, and he said it would be great if I could. But I said, 'If I do, I must be paid an expert's price,' . . . $50 a day." At this point the witness offered to show what Mr. Flaherty said, but the offer was excluded. At a subsequent stage of the case, however, the evidence was admitted as follows:

"Q. Now, Mr. Millen, will you tell the jury just what Mr. Flaherty said to you about your compensation for your services as an expert witness and in procuring evidence?

"A. I asked him about it and he said that he would pay me the $300 as agreed for getting the evidence and $50 a day as expert witness, if they received a verdict of $1,500 or more."

The plaintiff further testified that the morning next after his first interview with Mr. Flaherty the trial began and lasted five days, and that he testified as an expert: "I sat behind Mr. Flaherty most of the time." That about two weeks after the trial he saw Mr. Daniel H. Coakley, one of the defendants; that Mr. Flaherty went into Mr. Coakley's office with the witness; that Mr. Coakley said he could not say anything about the case then, as there was pending a motion for a new trial, but that when it was settled he would talk "turkey" with him. That about six months after this interview he saw Mr. Coakley again in his office; that at that time Mr. Coakley said the case had been carried "up to a higher court, and he could n't say anything then, but he said when it was settled and he got his money that he would be very

pleased to settle with me." That at one interview Mr. Coakley said that "whatever Flaherty said in the case went, for Flaherty had full charge of it." There was evidence on the part of the defendants that these statements as to the conversations with Johnson, Flaherty and Coakley were not true.

The defendants contended that the plaintiff had an indirect interest in the result of the cases, and in whatever he did he acted as a pure volunteer and not with any expectation of pay from the defendants or their client; that there never was any promise on the part either of Mr. Johnson or Mr. Flaherty to pay him; that, even if either of them undertook to make such a contract, it was made without the authority of the defendants and therefore not binding upon them; that there has been no ratification, and that, even if there was any contract, it was made by the defendants as agents for a known principal and not in their personal capacity.

But the testimony of the plaintiff, if believed, taken in connection with many of the facts in dispute, would warrant findings that contracts substantially as alleged in the declaration were made by Mr. Flaherty and ratified by Mr. Coakley acting for the defendants, with full knowledge of all the material circumstances; that the contracts were made by the defendants not as agent of their client but in their personal capacity; that the conditions of the contract have been fulfilled so far as respects the right of the plaintiff, and that he is entitled to recover.

There is nothing in the contention of the defendants that the contract was champertous. *Blaisdell* v. *Ahern,* 144 Mass. 393, and cases cited.

*Exceptions sustained.*

*P. D. Emmons,* for the plaintiff.
*J. G. Walsh,* for the defendants.