GLORIA B. SULLIVAN, administratrix, *vs.* JOHN A. GOULETTE & another.

Middlesex. November 8, 1961, April 3, 1962. — May 8, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Attorney at Law. Contract,* Validity, With attorney. *Champerty. Executor and Administrator,* Claim for death, Attorney, Account. *Death.*

Discussion of champerty. [310–311]

Damages recovered in an action for wrongful death under G. L. c. 229 are not a general asset of the decedent's probate estate but are held in trust for distribution to the statutory beneficiaries. [311]

The reasonableness of attorneys' fees incurred in the recovery of damages for wrongful death under G. L. c. 229, which § 6A, as amended through St. 1949, c. 427, § 6, permits to be deducted, in certain circumstances, from the damages recovered, is, in the first instance, committed to the Probate Court. [311]

The record of a hearing on the allowance of the account of an administratrix listing only a small amount of tangible personal property as assets and substantial damages recovered in an action under G. L. c. 229 for the wrongful death of the intestate justified a conclusion by the judge of the Probate Court that a contract entered into with the administratrix by an attorney at law to prosecute the death claim "for 50% of the verdict, including interest, after the deduction of costs and expenses, and, in case of an unfavorable decision . . . [for] his costs and expenses regardless, subject, naturally, to the approval of the Probate Court," was

an agreement for a contingent fee in not more than a reasonable amount as determined by the Probate Court; and public policy did not preclude payment of such compensation to the attorney.    [309, 311–312]

Upon appeals, with reports of the evidence and of the material facts, from a decree of the Probate Court on the account of an administratrix listing only $300 of tangible personal property as assets and $13,743 damages recovered in an action under G. L. c. 229 for the wrongful death of the intestate, it could not be said that the judge was plainly wrong in disallowing payment to an attorney retained by the administratrix of $3,042.93 for his services in prosecuting the tort action and of $365 for his services as attorney for the estate and in allowing him $4,900 for his services in the action, in disallowing payment of $3,042.94 to another attorney who participated in the prosecution of the tort action, and in approving payment of $780 to a third attorney who wrote the administratrix's brief on review of the tort action in this court.    [312–313]

A contract between an attorney at law and an administratrix for payment of a contingent fee in a reasonable amount, subject to the approval of the Probate Court, out of the damages recovered in an action under G. L. c. 229 for the wrongful death of the intestate was not illegal as in breach of fiduciary relationship because entered into without independent advice to the administratrix after the attorney had been counsel for her in one small transaction and in taking out administration.    [313]

Upon appeals from a decree of a Probate Court allowing the account of an administratrix, verification by her by general testimony of certain items whereby she reimbursed an attorney at law for reasonable expenditures in connection with an action under G. L. c. 229 for the wrongful death of the intestate justified the judge's allowance of the items. [313]

St. 1949, c. 427, § 6, amending G. L. c. 229, § 6A, by omitting "reasonable costs and expenses of suit" from the items chargeable in certain circumstances to the damages recovered for wrongful death under G. L. c. 229, had no effect on the right of a decedent's representative as trustee of such damages for the statutory beneficiaries to be exonerated from that trust fund for the reasonable expenses of collecting it.    [314]

PETITION, filed in the Probate Court for the county of Middlesex on February 5, 1960, for the allowance of an account.

The case was heard by *McMenimen*, J.

*Selma R. Fox,* (*Daniel J. McGillicuddy & Daniel G. Rollins* with her,) for the respondents.

*Joseph J. Hurley,* (*Maurice R. Flynn, Jr.,* with him,) for the petitioner.

*Sumner H. Rogers, Edward J. Barshak, Richard S. Bowers, Harold Horvitz, Nathan Fink, Kenneth B. Hughes, H. William Radovsky, H. Brian Holland, George C. Caner,*

Sullivan *v.* Goulette.

*Jr., & W. Lincoln Boyden,* by leave of court, submitted briefs as amici curiae.

CUTTER, J. These are appeals by Goulette and Mrs. McCaul, two of four children of Mrs. Corbett, who died intestate in 1954, from decrees of the Probate Court allowing (a) with modifications, the substituted first account of the administratrix (also a child of Mrs. Corbett) and (b) her petition for distribution. There is a report of material facts. The evidence is reported.

The estate consisted of $300 of tangible personal property. The administratrix, however, brought an action to enforce ''a death claim for [the intestate's] accidental death . . . as the result of a fall.'' A jury in the Superior Court found for the plaintiff. In *Sullivan* v. *Hamacher,* 339 Mass. 190, this court overruled the defendant's exceptions. Upon an execution, $13,743 was paid, including costs and interest.

The main objections to the account were to Schedule B, item 7, a payment to Mr. Maurice R. Flynn, Jr. ($3,042.93) for ''attorney's fee for prosecuting tort action,'' and item 8, a payment ($3,042.94) to Mr. Thomas E. Cargill, Jr. Item 2 was in the sum of $365, sought by Mr. Flynn as attorney for the estate. There were also objections to various subitems of item 9 involving reimbursement to Mr. Cargill of court costs, medical experts' fees, printing of brief, witness fees, and similar expenses of the tort action, including a payment to Mr. Joseph Hurley for ''preparation of brief for Supreme Judicial Court, tort case: $780.''

The probate judge found ''that the contract to prosecute the death claim was for 50% of the verdict, including interest, after the deduction of costs and expenses, and [that], in case of an unfavorable decision . . . Mr. Flynn would be paid his costs and expenses regardless, subject, naturally, to the approval of the Probate Court.'' The judge then found ''in the light of all the circumstances,'' that the aggregate fees ($6,085.87) shown in Schedule B, items 7 and 8, were ''not fair and reasonable''; that the case had a ''high hazard of recovery'' and was ''not the usual tort

case and hence deserves a higher degree of compensation than the ordinary"; that "it necessitated a great deal of time, effort and detail to convince a jury towards a favorable verdict" and also a brief "on appeal"; but that "it was not such a technically involved case that . . . [it] necessitate[d] . . . retaining [in addition to Mr. Flynn] a specialist in the tort field."

The judge disallowed for payment to Mr. Flynn item 2 ($365) and item 7 ($3,042.93) and allowed to Mr. Flynn instead $4,900 for services rendered to the administratrix in the tort case. He disallowed item 8, the payment of $3,042.94 to Mr. Cargill entirely, in effect making it necessary for Mr. Flynn to take care of Mr. Cargill's fee. A decree to this effect was entered.

1. We first consider the contention that the agreement made with the administratrix by Mr. Flynn was champertous. In Massachusetts an attorney, not previously interested in a case, without champerty, may agree to prosecute the case in return for a fee equal to a share of the recovery, if in any event a debt to the attorney from the client is to exist for the services. See *Ackert* v. *Barker,* 131 Mass. 436, 437–438; *Blaisdell* v. *Ahern,* 144 Mass. 393, 395; *Hadlock* v. *Brooks,* 178 Mass. 425, 432; *Bennett* v. *Tighe,* 224 Mass. 159, 161; *Smith* v. *Weeks,* 252 Mass. 244, 251–252; *Weinberg* v. *Magid,* 285 Mass. 237, 238–239; *Baskin* v. *Pass,* 302 Mass. 338, 342; *Gill* v. *Richmond Co-op. Assn. Inc.* 309 Mass. 73, 77; *DiVenuti* v. *DeLuccia,* 313 Mass. 775, 776. See also *Walsh* v. *White,* 275 Mass. 247, 248. An agreement will not be saved from champerty solely by the circumstance that the client is to furnish the necessary money to pay expenses. See *Lathrop* v. *Amherst Bank,* 9 Met. 489, 491–492; *Ackert* v. *Barker,* 131 Mass. 436, 438; *Holdsworth* v. *Healey,* 249 Mass. 436, 439; *Baskin* v. *Pass,* 302 Mass. 338, 342. If there is suggestion of a broader rule in *Blaisdell* v. *Ahern,* 144 Mass. 393, 395, it should be noted that in *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304, 314, the *Blaisdell* case is interpreted as being one "where the attorney is to be paid in any event, the amount of the fee being de-

pendent upon the amount recovered." The Massachusetts rule seems to be more strict than that set forth in Restatement: Contracts, § 542 (1) and illustration 2. See Williston, Contracts (Rev. ed.) § 1712; Corbin, Contracts, § 1424.

The judge's findings do not indicate that he regarded as significant evidence that the administratrix agreed to pay in any event for the services of Mr. Cargill and for having Mr. Hurley prepare the brief for this court. The findings seem to show that the judge interpreted the arrangement as one in which Mr. Flynn's charges were to be "subject, naturally, to the approval of the Probate Court." Such a provision is a reasonable one to regard as implied in an arrangement by an attorney to prosecute for an administratrix a cause of action for wrongful death under G. L. c. 229, where the suit is the principal asset of an estate. The money recovered upon a wrongful death claim is not a general asset of the probate estate, but constitutes a statutory trust fund, held by the administratrix as trustee for distribution to the statutory beneficiaries. See G. L. c. 229, §§ 1, 2C, 6A (as amended, in the case of §§ 1 and 6A, through St. 1949, c. 427, §§ 1, 6, and, in the case of § 2C, through St. 1951, c. 250; see later amendments by St. 1958, c. 238, §§ 3, 6, and St. 1961, c. 166); *Arnold* v. *Jacobs,* 316 Mass. 81, 85; *Maltzman* v. *Hertz,* 336 Mass. 704, 707–708; Scott, Trusts (2d ed.) §§ 6.5, 17.5; Newhall, Settlement of Estates (4th ed.) § 97. Section 6A (to the extent that the deceased's estate is insufficient) provides for the deduction from the sums recovered of "reasonable attorneys' fees incurred in such recovery" and certain other expenses. The determination, in the first instance at least, of the reasonableness of such fees is committed to the Probate Court. See G. L. c. 215, § 39. See also G. L. c. 206, § 16 (as amended through St. 1949, c. 140); Newhall, Settlement of Estates (4th ed.) § 33. Cf. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 189–191; *Perry* v. *Perry,* 339 Mass. 470, 483; *Wasserman* v. *Locatelli,* 343 Mass. 82, 85–87; *Cloutier* v. *Lavoie,* 343 Mass. 125, 127–128. Cf. also note, 77 A. L. R. 2d 411. In the circumstances, we think that the

judge could justifiably conclude that the amount of the fee was subject to the approval of the Probate Court, and that in essence it was an agreement for a contingent fee, which in any event was not to be more than reasonable compensation as determined by the court. Cf. *Muldoon* v. *West End Chevrolet, Inc.* 338 Mass. 91, 96. Cf. also *Application of Kamerman,* 278 F. 2d 411, 413–414 (2d Cir.); Restatement: Contracts, § 545; Corbin, Contracts, § 1426; Williston, Contracts (Rev. ed.) § 1713, footnotes 3 and 4.

In our initial consideration of this case we entertained grave doubt whether the agreement for fees would be valid under the Massachusetts cases cited above. Few of the Massachusetts cases on champerty were decided very recently. We were of opinion that some consideration should be given to whether the principles stated in those cases are still appropriate in the light of modern conditions. See Eleventh Report of the Judicial Council (1935), Pub. Doc. 144, p. 36. Accordingly, the case was set down for oral reargument on specific issues relating to the lawyers' fees and we gave opportunity to bar associations and others to file briefs as amici curiae. We have been much assisted by several such briefs. Cf. *Myers* v. *United States,* 272 U. S. 52, 176–177. They propose reconsideration of the earlier decisions on champerty and contingent fees. Cf. *Gair* v. *Peck,* 6 N. Y. 2d 97. It may be that the subject should be dealt with by appropriate court rules. For the decision of the present case, however, it is sufficient to say that we are of opinion that, in the circumstances, the principles set forth in the earlier cases should not preclude payment of fair and reasonable compensation to Mr. Flynn. In reaching this conclusion we give special weight to the fact that the compensation to be paid is subject to the approval of the Probate Court. We perceive no considerations of public policy which require denial of all compensation.

2. The administratrix sought to pay (a) $3,042.93 to Mr. Flynn, for services in the tort case, plus $365 for his services as attorney for the estate, (b) $3,042.94 to Mr. Cargill, and (c) $780 to Mr. Hurley for writing the brief filed

in this court, a total of $7,230.87 from a gross estate of $14,043, including the tort judgment. The judge allowed $4,900 to Mr. Flynn and $780 to Mr. Hurley, a total of $5,680.

In the tort case, there were obstacles to a recovery and there was substantial likelihood of a verdict for the defendant. The practical chances that counsel would be paid anything, if there was no recovery, were slim indeed. After giving due weight to the decision of the probate judge, it cannot be said that he was plainly wrong.

3. It is also contended that the agreement between Mr. Flynn and the administratrix was illegal because Mr. Flynn had been counsel for the administratrix and her mother in one small earlier item of business and for the administratrix in taking out administration, and the contract for fees for services in the tort case was made without independent advice to the administratrix. As interpreted by the trial judge, the fee was subject to the approval of the Probate Court. The arrangement thus violated no preëxisting fiduciary relationship.

4. It is further contended that the administratrix and Mr. Flynn failed to keep proper books or other accounts of the administration and of the proceeds of the death claim. The account first filed was inadequate and, as the probate judge pointed out, even the substituted account was somewhat deficient. The deficiencies, however, are now unimportant. The substituted account reveals adequately for all present purposes what funds were received and for what they were expended.

It has been argued that certain items of reimbursement of expenditures on the tort case by Mr. Flynn and Mr. Cargill were not sufficiently substantiated. There was little affirmative evidence specifically directed to these items. The administratrix, however, verified these items by general testimony. The judge's finding that these expenditures were proper, implied in his allowance of the account, was justified. See *Bearse* v. *Styler,* 309 Mass. 288, 291–292; *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 339 Mass. 630, 632–633.

Reasonable expenses of recovery upon the wrongful death claim are properly deductible from the amount recovered thereon, notwithstanding the amendment by St. 1949, c. 427, § 6, of G. L. c. 229, § 6A, as theretofore amended through St. 1946, c. 614, § 4. The 1949 amendment omitted[1] an explicit earlier provision for charging (against sums recovered under c. 229) ''reasonable costs and expenses of suit.'' Such expenses, if reasonable, must be met from some source. As has been pointed out above, an administratrix, in pressing a death claim under G. L. c. 229, is doing so in effect as trustee for the statutory beneficiaries. As trustee she is entitled to be exonerated for reasonable charges of executing her trust from the trust fund on usual trust principles. See Scott, Trusts (2d ed.) §§ 6.5, 17.5, 244.

5. There was no impropriety in the judge's denial of the motion that he disqualify himself. His report of material facts and the evidence reveal little more than that he commented upon friction among the parties prior to and at the hearing.

*Decrees affirmed.*

---

[1] The legislative history of the 1949 amendment sheds no light on the reason for the omission. See 1949, Senate Bills, Nos. 657, 690. Cf. 1949 Senate Bills, Nos. 191, 192.