MONTGOMERY REED, trustee in bankruptcy, *vs.* LAURA M. CHASE & another.

SAME *vs.* CORA B. COOK.

SAME *vs.* CORA B. COOK & others.

Essex.    January 10, 11, 1921. — March 4, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Attorney at Law*, Champerty. *Bankruptcy. Contract*, Validity. *Equity Jurisdiction*, Conveyance in fraud of creditors. *Evidence*, Remoteness, Relevancy and materiality. *Equity Pleading and Practice*, Findings by master, Suits heard together, Amendment of bill.

An attorney at law, who was a creditor of one who had been adjudicated a bankrupt, became the attorney for the trustee in bankruptcy and procured an order by the referee in bankruptcy granting a petition by the trustee for leave to prosecute suits in equity against daughters of the bankrupt to compel conveyances to the trustee of real estate alleged to have been conveyed to the daughters without consideration and with the intent to hinder, delay and defraud the bankrupt's creditors, the order of the referee stipulating that the attorney should file a bond with the trustee saving him harmless from the cost of the suits and that the attorney should receive no compensation for his services if no assets were recovered. *Held*, that the agreement was not champertous and was valid.

Upon appeals by the defendants from final decrees for the plaintiff in three suits in equity by a trustee in bankruptcy against daughters of the bankrupt to com-

pel a conveyance to the plaintiff of real estate alleged to have been conveyed to the defendants without consideration and with an intent to hinder, delay and defraud the bankrupt's creditors, it appeared that the suits were heard together by a master, and that the evidence was reported; and it was *held*, that

(1) The master was warranted by the evidence in finding that, from 1881 to 1912, when he was adjudicated a bankrupt, the bankrupt was insolvent, and that, in accordance with a general plan or scheme deliberately formed and continuously practised by him during that period, to keep his property concealed in the name of his daughters and other relatives with the intent of defrauding his creditors and preventing them from reaching it, the conveyances in question were made without consideration and with the knowledge of the respective defendants;

(2) Evidence tending to show that conveyances of the property described in one of the suits were made by the bankrupt in accordance with the general scheme above described in 1881 was not so remote as to be inadmissible;

(3) It was not necessary, in order that the conveyances to the defendants should be declared invalid, that it be shown that the grantees participated in the bankrupt's fraudulent intent, they having received the conveyances without consideration;

(4) The conveyances, having been made or procured to be made by the bankrupt to defraud his creditors, were voidable although free from moral turpitude;

(5) The three suits having been heard together, findings by the master in his report in one of the suits, which bore upon the general scheme of the bankrupt to defraud his creditors, above described, were competent to be considered so far as pertinent in the other two suits.

It is no valid objection to the allowance, by a judge in the exercise of his discretion, of a motion to amend the bills in equity above described so as to require the defendants to account for rents and profits received by them from the property in question, that the schedules of the bankrupt showed liabilities much less than the amount of his assets as shown by the original reports of the master, so that the real estate described in the bills and found to have been conveyed in fraud of creditors appeared to be sufficient to liquidate the liabilities, as it could not be assumed that the debts might not eventually be proved to be far in excess of the amount shown in the schedules.

A report by a master of evidence by question and answer is a compliance with the requirements of a rule directing him to report the evidence or so much of it as either party might request.

THREE BILLS IN EQUITY, filed in the Superior Court on March 12, 1913, and afterwards amended, by the trustee in bankruptcy of Herbert W. Cook against daughters of the bankrupt and the husband of one of them to compel conveyance to the plaintiff of certain parcels of real estate alleged to have been conveyed by the bankrupt, or by the person from whom they were purchased at the bankrupt's procurement, to the several defendants without consideration and with intent to hinder, delay and defraud the bankrupt's creditors, and for accountings for rents and profits received by the defendants from the real estate; also, in the third

suit, for work and services rendered and money paid by the bankrupt in fraud of his creditors upon the premises therein described.

The suits were referred to a master under a rule directing him to report the evidence or so much of it as either party might request, and were heard together by him. Material evidence and findings of the master are described in the opinion. The master filed in each case a report and, upon recommittal after the allowance of an amendment to the bill, a supplemental report, to which the defendants filed objections and exceptions. The suits then were heard further, and there were entered interlocutory decrees overruling the defendants' exceptions and confirming the reports and final decrees granting to the plaintiff the relief sought in the bills. The defendants severally appealed.

*N. D. A. Clarke,* for the defendants.

*F. E. Shaw,* for the plaintiff.

CROSBY, J. These are three bills in equity brought by the plaintiff, as trustee in bankruptcy of Herbert W. Cook, to recover certain parcels of real estate standing in the name of the respective defendants and alleged to be held by them in fraud of the creditors of the bankrupt. After being referred to a master, who was directed to report the evidence or so much of it as either party might request, the cases were heard together, and a report was made, in each case, in which the master found generally in favor of the contentions of the plaintiff; thereafter the plaintiff filed in each case an amendment to the bill, alleging that the defendants had received rents and profits from the real estate in question and praying that an accounting be had; these motions were allowed and the cases were recommitted to the master, who, after hearings thereon, filed supplemental reports. Final decrees have been entered and the cases are before this court on appeals by the defendants from the decrees, and upon exceptions to the master's reports.

Apart from the merits, it is the contention of the defendants that the plaintiff is precluded from maintaining these suits on the ground that an agreement entered into between the plaintiff and his counsel is champertous. The facts upon which that contention is based are in substance as follows: A petition was filed by the attorney for the trustee with the referee in bankruptcy praying that the trustee be ordered to institute these proceedings.

This petition was allowed with the understanding that the attorney should file a bond with the trustee, saving the latter harmless from the cost of the suits; and that the attorney should receive no compensation for services if no assets were recovered. The attorney was a judgment creditor of the bankrupt. In these circumstances the master finds that the trustee not only authorized the suits but became active in their prosecution. When a party has no interest, legal or equitable, and no claim, vested or contingent, in a suit, an agreement to carry it on at his own expense in consideration of some understanding that he is to have some profit out of it, is champertous and illegal. *Scott* v. *Harmon,* 109 Mass. 237. Where, however, as in the case at bar, the plaintiff's attorney has a direct interest as a creditor of the bankrupt in securing for the benefit of the creditors including himself property alleged to have been conveyed with intent to defraud them, the agreement so made in accordance with the order of the referee in bankruptcy is not unlawful. *In re Bailey,* 151 Fed. Rep. 953. *In re Meadows, Williams & Co.* 181 Fed. Rep. 911. A party may prosecute a suit even if he has only an indirect interest in the subject matter thereof. *Call* v. *Calef,* 13 Met. 362. So a party may agree to prosecute a suit where he has reasonable ground to believe himself interested although not so interested. *Findon* v. *Parker,* 11 M. & W. 675. It is plain that there is no merit in the objection that the agreement between the plaintiff and his attorney is champertous. *Rindge* v. *Coleraine,* 11 Gray, 157. *Williams* v. *Fowle,* 132 Mass. 385. *Hadlock* v. *Brooks,* 178 Mass. 425.

The defendants Cora B. Cook and Laura M. Chase are daughters of the bankrupt, and the defendant Charles B. Chase is the husband of Laura. Herbert W. Cook was adjudged bankrupt on March 1, 1912, on a voluntary petition filed by him on that date.

The first suit is brought against Laura M. Chase and her husband to recover a parcel of real estate situated on Collins Court in Lynn, to which, it is alleged, this daughter of the bankrupt took title in 1908 and gave a mortgage back for $600. The bill alleges that while the conveyance was made to the bankrupt's daughter the consideration was paid by him; that this conveyance was made to hinder, delay and defraud his creditors.

The second suit is brought against the bankrupt's daughter

Cora B. Cook to recover a mortgage of $575 on a parcel of real estate in Chelsea, on the ground that the mortgage was the property of the bankrupt but was taken in the name of his daughter for the purpose of hindering, delaying and defrauding his creditors.

The third suit is brought against Cora B. Cook, Laura M. Chase and Charles B. Chase, to recover a certain parcel of land situated at the corner of Essex and Porter streets in Lynn, on the ground that the various conveyances of it were made without consideration and in fraud of the creditors of the bankrupt. The bill also seeks to recover upon a claim for work and services alleged to have been rendered by the bankrupt in the erection of a three-story tenement house on the land therein described, and for money paid by the bankrupt in the erection of the tenement house in fraud of his creditors.

The master states that much of the evidence before him was admitted by agreement of counsel and much more was admitted without objection. He found that the bankrupt was a carpenter and builder from 1877 to 1895; that he had built a large number of houses, some of them on his own account, which were sold by him, and in many instances he took mortgages back as part of the consideration; that at times these mortgages were taken in the name of some member of his family, and that the reasons given by him therefor was to avoid liability on the notes, and at times for the purpose of procuring a commission, and at other times for reasons which he was not able to state.

In the first suit it was found by the master that the property therein described standing in the name of Laura M. Chase was never seen by her; that she did not know of its value or income, the rents were collected by her father, and she had no knowledge of the details of the transaction in question. She testified that while the property stood in her name her sister Cora was the owner of one undivided half of it, because she contributed one half the expense of the repairs. It was also found that when this property was conveyed to the defendant the grantor had no property standing in his name; that he had no available property to pay his existing indebtedness; that at that time many attachments were recorded against him and suits were pending; that he could not have paid his existing debts from any property that he then had standing in his name; that the consideration for the conveyance of

the property was paid by him; that it was placed in the name of the defendant for the sole purpose of keeping it beyond the reach of his creditors; and that the defendant knew the purpose and reason for the conveyance being made to her. These findings upon all the evidence were not unwarranted.

The second suit was brought against Cora B. Cook to recover a mortgage of $575 on the Chelsea property, which was conveyed by the bankrupt to the defendant in 1907 and stood in her name until 1912 when she conveyed it to one Simone for $1,825, subject to a mortgage for $1,000; that $250 was paid at the time of the conveyance and a mortgage for $575 was given for the balance of the purchase price. The report recites that the defendant testified she had no knowledge of the transfer of the property to her at the date of the deed, but that afterwards her father told her about it and said that if she would pay the tax on the property for the year 1910 she could own it absolutely, and that she was corroborated in this testimony by her father; that the evidence in this and the other cases came almost wholly from the defendant, her sister Laura, her father and her grandmother, all of whom lived in the same house. In addition to the evidence heretofore referred to, as to the methods under which the bankrupt conducted his business, his financial condition, and upon other evidence pertinent to this transaction, the master found that when the property was conveyed to the defendant by her father that he had no other property standing in his name; that suits were pending against him, and that he could not have paid from any property standing in his name his existing indebtedness. The defendant contended that at times she lent money to her father and that this was done by obtaining it from her mother who paid it to him. The master found that, if any money passed between the bankrupt, the defendant and her mother, which he does not find, there was no agreement that it was to be repaid nor any understanding or expectation to that effect; that, if money were paid as claimed, it was a gift and not a loan. He also found that the tax on the property for the year 1910 was not paid until 1912, and was finally paid by Simone, the purchaser, as a part of the consideration. In view of these and other findings of the master, he concludes that there was no consideration for the deed of the property and "that the title . . . at all times was really in the

bankrupt; that the placing of it in the respondent's name was done for the purpose of keeping it from the reach and control of the bankrupt's existing creditors; . . . that the respondent, from her close relationship with her father and from the knowledge which she had of his dealings, undoubtedly knew, and I so find, the purpose for which this was done." We are unable to say, as matter of law, upon the reported evidence that these findings were not warranted.

In the third suit it is found that the real estate therein described was conveyed by the bankrupt to his sister; that in 1882 she conveyed it to his wife; that each conveyance was without consideration; that in 1883 his wife conveyed it to his mother; that in 1898 it was reconveyed to his wife and the title stood in her name until December 13, 1911, when she and the bankrupt conveyed it to their daughters, the defendants Cora and Laura; that the deed was not recorded until January 15, 1912; that when the last conveyance was made these defendants knew that their mother could live but a short time; and that she died on December 17, 1911. The master states that it was admitted no consideration was paid at the time of the conveyance from the wife of the bankrupt and himself to the defendants above referred to, but that he testified his mother paid to his wife $450 or $500 for the conveyance from the latter in 1883, and received the same amount from his wife in 1898, when the real estate was reconveyed to her; that during the time his mother held the title various mortgages were placed upon the property by her at his direction and that he received the benefits from the property. Also, that there was much testimony on the question whether any consideration was paid for the conveyance from the bankrupt's wife to his mother in 1883, for the conveyance from his mother to his wife in 1898, and as to his financial condition and the knowledge of the various grantees regarding the purpose of these conveyances. The defendants objected to evidence respecting the conveyances beginning with the year 1881, and to evidence which tended to show that they were void or otherwise illegal, on the ground that such evidence was too remote; we are of opinion that in view of all the other findings of the master the evidence was admissible.

It was found that from 1881 down to 1910 many attachments were made and suits brought against the bankrupt; that in 1905 he

had been arrested on the poor debtor process founded on a judgment recovered against him in 1902; that he had no real estate standing in his name during the years 1881 to 1912 except the Chelsea property before referred to which was in his name from June to September, 1907; that he had an interest in the Stetson Land Company amounting to $3,473; that the shares of stock held by him in that company were pledged by him as collateral security and had been so pledged for several years; that the company was formed in 1890 and his interest was paid over to him in 1906; that immediately on receiving this money he placed it in the bank in the name of his daughter Laura without her knowledge; that it was afterwards withdrawn from time to time by checks signed by her, at his direction, for his benefit, until the whole sum was exhausted on February 14, 1912; that on different occasions he placed property and mortgages in the name of one of his daughters without her consent for his own benefit. It also appears that there was a great amount of evidence of many transactions of the bankrupt with property and mortgages from the year 1881 to 1912, and the master finds on this evidence that the bankrupt never kept any property in his own name except the Chelsea real estate (above referred to) during that period; that when a mortgage was taken in his name it was not recorded until it was disposed of by another instrument recorded simultaneously with it. It is further found that the mother, sister, wife and daughters of the bankrupt knew that he was building and selling houses and taking back mortgages in their names rather than in his own; that they knew that various attachments were recorded against him and knew his purpose and intent in these transactions; that the method by which he conducted his business was disclosed by the evidence and showed that the parties thereto had knowledge that the dealings were irregular. The master states that upon the evidence he is unable to find that the bankrupt at any time from 1881 had sufficient property in his name to pay his existing indebtedness, and at no time after that year "could he have paid, from property that stood in his name, his indebtedness had simultaneous demands been made upon him." It is further found that the "bankrupt at all times from the year 1881 purposely kept this property [described in the third suit] in the names of the respondent, his wife, and mother for the sole purpose of keeping it from the reach of

his creditors then existing and subsequently to follow . . . that no consideration was ever paid for any conveyance of the property alleged in the bill [in the third suit] by any of the grantees thereto; that the various conveyances thereof were made without consideration, at the direction of the bankrupt, with the knowledge of the purpose on the part of the grantees."

An examination of the voluminous report of the evidence, including the testimony of the bankrupt and his daughters before the referee in bankruptcy, which in many respects is at variance with and contradictory to their testimony before the master, fails to show that any of the findings of the master are unwarranted. Those above referred to which are recited in his report in the third suit, are competent to be considered so far as pertinent in the first and second suits, the cases having been tried together. All the evidence with the rational inferences to be drawn therefrom warranted a finding that the bankrupt was insolvent from 1881 until he was declared bankrupt in 1912; that during all that time he was in debt and endeavored to keep the properties in question, and any other property in which he had an interest, beyond the reach of his creditors, by conveyances thereof to his sister, his mother, his wife or his daughters; that the conveyances in question were made by him with the intent to defraud his creditors and that they were made without consideration and with the knowledge of the respective defendants. *Fitzgerald* v. *Pendergast,* 114 Mass. 368. The master saw the witnesses, including the bankrupt and the defendants, and was able to observe their conduct and demeanor and was, in view of their testimony, in a position to determine what weight was to be given to it. He had better means of weighing their conflicting statements than this court has upon the printed record of their testimony, and was enabled to draw inferences contrary to their contentions in view of such testimony and the other evidence before him. If believed, the evidence showed a general plan or scheme deliberately formed and continuously practised by the bankrupt from 1881 to 1912, when he filed the petition in bankruptcy, to keep his property concealed in the names of his daughters and other relatives with the intent of defrauding his creditors and preventing them from reaching it. The evidence upon these questions was plainly admissible. *Jordan* v. *Osgood,* 109 Mass.

457, 461.  *Commonwealth* v. *Dow,* 217 Mass. 473.  *Rioux* v. *Cronin,* 222 Mass. 131.

If the bankrupt's intent was actually fraudulent in taking conveyances in the name of his wife, daughters, or other relatives, it is not necessary in order to invalidate them to show that the grantees participated in such intent, if they paid no part of the consideration.  *Marden* v. *Babcock,* 2 Met. 99, 104.  *Clark* v. *Chamberlain,* 13 Allen, 257, 260, 261.  If the conveyances were made with intent on the part of the bankrupt to defraud the creditors they are voidable.  *Matthews* v. *Thompson,* 186 Mass. 14, 21.

The allowance of the motions to amend the bills, and to recommit the reports for an accounting of rents and profits was a matter of discretion, the exercise of which cannot be revised by this court.  The objection of the defendants that the schedules of the bankrupt showed liabilities much less than the amount of his assets as shown by the original reports of the master, did not require the court to deny the motions, on the ground that the real estate described in the bills and found to have been conveyed in fraud of creditors was sufficient to liquidate the liabilities, as it could not be assumed that the debts might not eventually be proved to be far in excess of the amount shown in the schedules.

The exceptions taken by the defendants to the admission of testimony before the master need not be considered in detail; we have examined all of them and find no error.  The exceptions to the master's original and supplemental reports are so numerous that no useful purpose could be served by considering them separately; we have, however, examined all of them and are satisfied that they cannot be sustained.  The contention of the defendants that the report of the evidence by question and answer is not a compliance with the order of the Superior Court to report the evidence, is without merit.  In *Churchill* v. *Palmer,* 115 Mass. 310, cited by the defendants, the report was made under Gen. Sts. c. 115, § 6, which authorized a judge of the Superior Court to make reports to this court only on questions of law, and has no application to a suit in equity.  *Electric Welding Co. Ltd.* v. *Prince,* 200 Mass. 386, 391, 392.

The finding of the master in the first suit that the defendants Laura M. Chase and Cora B. Cook are chargeable with the sum

of $1,479 for rent received, was erroneous so far as the finding was against Cora B. Cook, as she was not a party to that suit. However, it did not harm her as the final decree runs only against Laura M. Chase.

The burden of proof was on the plaintiff to maintain the material allegations of the bill; in view of the direct and circumstantial evidence, the facts found and the reasonable inferences which could have been drawn therefrom must be accepted as final; it is plain that they were supported by the evidence. As no error of law is disclosed in the record it follows that in each case the decree must be affirmed, with costs.

*Ordered accordingly.*