MEDLEY T. HOLDSWORTH *vs.* MARGARET M. HEALEY.

Essex.   December 10, 11, 1923. — June 12, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, Validity.   *Attorney at Law.   Champerty.*

Under an agreement by an attorney at law in undertaking employment
for a client for the prosecution or settlement of a claim against a phy-
sician for alleged negligence, the attorney was to receive nothing
from the client for his services; the client was to be under no obligation
to him in any respect; the sole source of his compensation was to be a
sum to be obtained on account of the claim against the physician, of
which he was to receive one half; the extent of the liability of the client
was to be a sum not exceeding $25 to cover cash disbursements, and, if
the prosecution of the claim went so far as a trial, the attorney was to
procure at his own expense and without cost to the client a trial lawyer
to conduct the trial and whatever expert witnesses were necessary.
The claim was one in which, previous to the making of the contract,
the attorney at law had no title or interest, present or contingent.
*Held*, that the contract of the attorney with the client was champertous
and illegal, and that he could not maintain an action against the client
for an alleged balance due to him for services rendered thereunder.

CONTRACT by an attorney at law against a client for $850,
alleged to be a balance due for services.   Writ dated June
9, 1921.

In ˙the Superior Court, the action was tried before
*Hammond*, J.   Material evidence is described in the opin-
ion.   By order of the judge, a verdict was entered for the
defendant.   The plaintiff alleged exceptions.

*S. Parsons*, for the plaintiff.

*C. F. Lovejoy*, for the defendant.

RUGG, C.J.   This is an action of contract by an attorney
at law against a former client to recover a balance alleged
to be due for professional services rendered to her.   The de-
fendant consulted the plaintiff about the prosecution of her
claim against a physician for alleged carelessness in treating
her.   The contract between the plaintiff and defendant,
according to the testimony of the plaintiff, was that the de-
fendant said to him in substance: Would you be willing to

take this case on the terms that you are to have one half and I one half of whatever you get out of it? " I do not want to throw any money away, or spend any money, on prolonged litigation. I know what litigation is and what the bills amount to." The plaintiff replied: " There may be some small expenses in bringing the suit, entering the writ and various fees for serving writs . . . in any event it would not exceed $25. . . . Would you be willing to stand for that ? " The defendant replied: " If it is not more than that, I would, but I don't want to get into any expense myself." There was further discussion between the two as to the amount which the defendant would be willing to take in settlement without a trial. The defendant said, " If you could get me $1,000 clear to myself, I would take it and be satisfied. I mean by that that all the expenses are to be paid, your expenses, whoever you might get, witnesses, doctors and all, and I had $1,000 clear to myself, I would be satisfied, without any further expenses." The plaintiff replied that that was all right and he would do what he could; that " that included, in what I do for her, I would secure for her if it went to court, — a case like this that I did not feel qualified to try it or argue it before a jury, but I would secure one of the ablest counsel in Essex County, a trial lawyer, if it went into court; I should see to that myself." The plaintiff further testified that he paid a retainer of $35 to a trial lawyer and had several conferences with him about the case. Another witness, who was present at the interview when the contract was made, was called by the plaintiff and testified that the defendant told the plaintiff, " she had no money to put in it [her case] and did not want to put any money in, and asked if there was some way where the plaintiff could take it and get his pay out of it; that the plaintiff said ' he didn't like to do those things and he would rather let it go along;' that she said she ' would not put a dollar into it without she could be pretty sure she could get it back; that she had been using a lot of money and she could not afford it.' After talking some little time, she asked him ' if he would take it and divide the — whatever they got — on that kind of a basis,' and they agreed upon that basis, except he

was to have a small fee for disbursements. She asked how much it would be, and he said, as I remember it, $15 or $25. She said, ' You mean I will have to pay that anyway whether I win or lose,' and he said ' Yes.' She hesitated a minute, looked over to me, and I bowed to her to say yes, and she said yes. Then it was stated that they were to have equal divisions; that she was to get one half of whatever the settlement was; that plaintiff was to take the case and go along with it, hire a lawyer, the best talent that he could get, to try with him if it went to trial, and to get the best experts that he could get, and fight the case to the bitter end, but she wanted to settle, she did not want to go to court under any condition."

The plaintiff took steps in the prosecution of the claim of the defendant, made out a writ and after negotiations secured a settlement on terms satisfactory to the defendant, who repudiated the agreement and paid the plaintiff something on account. This suit is on the agreement and is to recover one half the amount received by the defendant, less the credit of the sum paid on account. The defence is that the agreement was champertous and hence illegal and unenforceable.

It is plain from the testimony, by which the plaintiff is bound, that the agreement was that he was to receive nothing from the defendant for his services; that she was to be under no obligation to him in that respect; that the sole source of his compensation was to be the sum to be obtained on account of her claim against the physician, of which he was to receive one half; that the extent of the liability of the defendant was a sum not exceeding $25 to cover the cash disbursements of bringing the action, and that, if the case went so far as trial, the plaintiff was to procure at his own expense and without cost to the defendant a trial lawyer to conduct the case in court and whatever expert witnesses were necessary in a case of that nature to present to the jury the contentions of the plaintiff, and that the claim of the defendant against the physician was one in which, prior to the making of the contract the plaintiff had no title or interest, present or contingent.

No elaborate discussion is required to demonstrate that

the contract on which the present action is founded is champertous and hence illegal. It was said in *Scott* v. *Harmon,* 109 Mass. 237, 238: " Champerty is defined to be ' the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute or some profit out of it,' ' whereupon the champertor is to carry on the party's suit at his own expense.' " Our earlier cases were all reviewed at length in *Hadlock* v. *Brooks,* 178 Mass. 425. It there was held, page 432, that an agreement that the services of the attorney were to be a share of the fruits of the litigation and were not to constitute a debt from the client, and that the prospective share was to be the only compensation, was champertous. There is present in the case at bar the additional element that certain expenses were to be borne by the attorney although actual cash disbursements for suing out the writ and serving and entering it in court not in excess of a definite amount were to be paid by the client. The principle against champerty is salutary. It has been long established. There appears to be no reason for relaxing it. The case at bar is within the express authority of numerous of our decisions. *Thurston* v. *Percival,* 1 Pick. 415. *Lathrop* v. *Amherst Bank,* 9 Met. 489. *Ackert* v. *Barker,* 131 Mass. 436. *Belding* v. *Smythe,* 138 Mass. 530. *Lancy* v. *Havender,* 146 Mass. 615. *Gargano* v. *Pope,* 184 Mass. 571. It is clearly distinguishable from cases like *Taylor* v. *Rosenberg,* 219 Mass. 113, *Bennett* v. *Tighe,* 224 Mass. 159, and *Reed* v. *Chase,* 238 Mass. 83. Our law is in accord with the great weight of authority elsewhere as declared in recent as well as older decisions, although there are adjudications somewhat contrary. *In re Attorneys & Solicitors Act 1870,* 1 Ch. D. 573, 575. *Neville* v. *London Express Newspaper, Ltd.* [1919] A. C. 368, 382, 397. *Watkins* v. *Sedberry,* 261 U. S. 571, 576. *Peck* v. *Heurich,* 167 U. S. 624, 630. *Brindley* v. *Brindley,* 121 Ala. 429. *McConnell* v. *McConnell,* 98 Ark. 193. *Scobey* v. *Ross,* 13 Ind. 117. *Butler* v. *Legro,* 62 N. H. 350. *Orr* v. *Tanner,* 12 R. I. 94. *Orino* v. *Beliveau,* 120 Maine, 550. *Blixt* v. *Janowiak,* 177 Wis. 175. See G. L. c. 220, § 8.

*Exceptions overruled.*