SHERWIN-WILLIAMS COMPANY *vs.* J. MANNOS & SONS, INC.

MARYLAND CASUALTY COMPANY *vs.* SAME.

WILLIAM A. GRAUSTEIN *vs.* SAME.

Suffolk.   Middlesex.   April 2, 13, 1934. — June 29, 1934.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Champerty. Assignment. Contract*, Validity. *Attorney at Law. Equity Pleading and Practice*, Appeal.

In a consolidated record before this court, of proceedings involving claims to a certain fund, one of which was by an assignee under an absolute assignment and agreement which the trial judge had found to be champertous and contrary to public policy, the following appeared: "The cases were tried . . . upon the understanding that the several issues involved would be fully tried out and findings of fact made, whether or not such findings were necessary to determine the cases upon the strict rules of pleading or of law, in order that the various matters in controversy between the several parties might be determined in one hearing." *Held*, that the questions of the champertous nature of the assignment and agreement and of their illegality, as being in violation of public policy, were open before the trial judge and this court.

Where one, not an attorney at law but acting as such, agrees that he will prosecute, at his own expense in behalf of his client, a suit for certain sums of money in which he himself has no personal interest, and that in case of success he will receive as his own some part of the sum recovered, which shall be all that he will receive in any event, and that a charge for his services shall not constitute a debt, the agreement is illegal.

The purchase by an attorney of a claim of his client in suit with intent to carry on the litigation at his own expense and for his own benefit is champertous and illegal.  Per PIERCE, J.

One, who was not an attorney at law nor a member of the bar of this Commonwealth, after advising an officer of a corporation which was involved in extensive litigation, received from the corporation an absolute assignment of its interest in a suit in equity respecting a fund held by the Commonwealth as a stakeholder, on the understanding that "he would undertake the prosecution of its claim and all the other suits that had been brought against the corporation or in which it was a party . . . would perform all legal services of every nature required by the corporation from the date of the assignment to the date of the decree" in the suit against the Commonwealth and "would bear all the expenses of prosecuting the claim against the Commonwealth including the expense of taking it to the Supreme Judicial Court if necessary without further charge to the corporation, that his services and expenses would not constitute a debt due him from" the corporation, and "that what he received out of the claim" against the Commonwealth "would be his only compensation for his services and expenses." The assignee performed the services agreed to. In litigation which arose with respect to his right to the fund held by the Commonwealth, the trial judge found that the assignee's contract contemplated, and that he performed, legal business for the corporation to as great an extent as any lawyer could have done, and that his contract with the corporation was champertous, against public policy, and void. By a final decree his claim was dismissed and an award of the fund to other claimants was made. Upon an appeal by the assignee, it was *held*, that,

(1) The mere form of the absolute assignment was not conclusive of the interest which the assignee had in such claim;

(2) A contention by the assignee that the contract with the corporation was not champertous because the suit in equity already was pending when the contract was made was unsound;

(3) A contention by the assignee that the contract was not illegal because such litigation was against the Commonwealth as a mere stakeholder was unsound: the proceeding was antagonistic to others claiming the fund;

(4) On the facts appearing, the agreement by the assignee was contrary to public policy and void and the assignment to him was both champertous and contrary to public policy.

THREE BILLS IN EQUITY, filed respectively in the county of Suffolk on July 5, 1932, in the county of Suffolk on August 10, 1932, and in the county of Middlesex on December 20, 1932.

The cases were heard together and are before this court upon appeals by William A. Graustein from final decrees entered by order of *Whiting*, J., denying claims by Graustein to the fund described in the opinion, where material facts are stated.

*W. A. Graustein, pro se.*

*T. von Rosenvinge,* (*J. J. Krohn* with him,) for William T. Goode, intervener.

*R. Wait,* for the defendant.

PIERCE, J. The cases are before this court on a consolidated record presenting the appeals of William A. Graustein. In one case Graustein is the plaintiff, and in the others there are numerous interveners including Graustein, Samuel B. Mannos and William T. Goode. In each case the plaintiff, intervening petitioners, and "claimants" sought to reach a certain sum of money, which by a decree of the Superior Court in the case of Brooks *et al. v.* Commonwealth *et al.* had been established as due to the present defendant, J. Mannos & Sons, Inc. Graustein's bill of complaint, intervening petitions, and "claimant's claim" to the fund decreed to be due the defendant are all based on an assignment to him by the defendant. Goode's intervening petitions assert a similar claim to the same fund based on an assignment to him. Samuel B. Mannos's claim is based upon claims for services performed for the defendant and money lent, and that the defendant had entered into an agreement with him that the money received by it from its claim in the Brooks case was to be paid to him to be applied for legal services and the balance on the loan. During the progress of the cases all the matters in dispute were disposed of by decrees entered by consent of the parties interested therein except the claims of Graustein, Goode and Samuel B. Mannos. The cases were tried together. No evidence is reported.

In 1929, Jacob Mannos and his sons, Paul Mannos and Albert Mannos, were carrying on a painting business as a partnership. Samuel B. Mannos lent money to them to such an extent that he finally insisted that as a condition of further loans from him the business must be incorporated. This was done in July, 1929. Up to the spring of 1931, Samuel B. Mannos was the treasurer and general manager of the corporation. After that time Paul Mannos acted as treasurer though he was not formally elected. In the fall of 1931, at least fifteen suits were pending against

the corporation for the collection of unpaid accounts. Samuel B. Mannos feared that a petition in bankruptcy would be filed against the corporation. The corporation also had a claim pending against the Commonwealth under the provisions of the statute giving a claim for work and materials furnished upon public buildings. This was in the form of an intervening petition in the case of Brooks *et al. v.* Commonwealth *et al.* above referred to. Samuel B. Mannos then went to William A. Graustein to see if he could handle the situation of staving off the creditors and keeping the corporation out of bankruptcy and receivership. Graustein discussed the matter with him and agreed to look over the papers in the various cases then pending. The case of Maryland Casualty Company *v.* J. Mannos & Sons, Inc., was discussed and Graustein thought it might be fought successfully. The case of Brooks *et al. v.* Commonwealth *et al.* was gone over thoroughly and Graustein could not say what it was worth. He expressed the opinion that the possibility existed of winning the plea in bar, but when it came to the evidence it did not look as if the corporation could get a great deal of money, if anything. The matter of compensation was taken up. The judge found that William A. Graustein was told that the corporation had no money to pay for his services; that he stated that the litigation would cost a lot of money, especially if the case of Brooks *et al. v.* Commonwealth *et al.* went to the Supreme Judicial Court, that he wanted to know whether he could get his pay, that he could not do the work without pay and that from an examination of the papers brought to him the prospects of bankruptcy were very good in spite of what any man could do, that "if I am going to take my chances and do all this work I want to be secured for my pay." Samuel B. Mannos said that the corporation "has nothing to secure you with." William A. Graustein said, "I'll tell you what I'll do. If the corporation will give me a right out assignment both on the equity and legal title — so that I have the entire fund whatever I get out of it — to the case of Brooks *et al. v.* Commonwealth *et al.*, I will proceed and help you in all

these matters and try to keep the corporation out of bankruptcy or receivership and use my influence to settle these matters as cheaply as I can, and any cases that may be filed against the corporation until the final decree in my case that arise out of the transaction. I will also try and defend without any other — no other cost except that claim, and if the case goes to the Supreme Court of Massachusetts — the Commonwealth case — I'll pay all expenses of going there and I'll pay all the witness fees and costs for trying the Commonwealth case"; that "it was agreed between William A. Graustein and Samuel B. Mannos that if J. Mannos & Sons, Inc., would assign to him all its legal and equitable interest in the intervening petition brought by it in the case of Brooks *et al. v.* Commonwealth *et al.*, not as collateral for his fees and expenses, but absolutely so that he would have the entire fund, whatever was received from it, he would undertake the prosecution of its claim and all the other suits that had been brought against the corporation or in which it was a party, use his best efforts to stave off the creditors, use his influence to settle the claims as cheaply as possible and to keep the corporation out of receivership or bankruptcy until the claim of J. Mannos & Sons, Inc., in the intervening petition brought in the case of Brooks *et al. v.* Commonwealth *et al.* had been disposed of; that he would perform all legal services of every nature required by the corporation from the date of the assignment to the date of the decree in the case of Brooks *et al. v.* Commonwealth *et al.*; that he would bear all the expenses of prosecuting the claim against the Commonwealth including the expense of taking it to the Supreme Judicial Court if necessary without further charge to the corporation, that his services and expenses would not constitute a debt due him from J. Mannos & Sons, Inc., and that what he received out of the claim would be his only compensation for his services and expenses"; that he "stated that before acting in court in any case he would require a power of attorney authorizing him to act as an attorney in fact for the corporation."

The judge further found as follows: The corporation

voted that Samuel B. Mannos was authorized to sign the proper powers of attorney. An assignment of the claim above set forth was given to Graustein on January 16, 1932, executed by Samuel B. Mannos, who had authority to execute the assignment. On January 1, 1932, Graustein began to perform services of a legal nature for J. Mannos & Sons, Inc. On March 11, 1932, receivership proceedings were brought by certain creditors. Graustein appeared for the corporation. Money to pay off these creditors was advanced by Goode and the receiver discharged. Shortly thereafter, at the suggestion of Graustein, an assignment dated March 18, 1932, was made to Goode of all claims of the corporation including future claims to secure him for money advanced. After considerable litigation the case of Brooks *et al. v.* Commonwealth *et al.* was disposed of by a decree under which the Commonwealth was to pay J. Mannos & Sons, Inc., the sum of $3,116.29. Until the fall of 1932, there was, apparently, no friction between the members of the Mannos family, who owned all the stock of J. Mannos & Sons, Inc., William A. Graustein or William T. Goode. But after the claim against the Commonwealth was established in the sum of $3,116.29, as above set forth, a controversy arose as to who should get this money. Graustein, Goode and Samuel B. Mannos all claimed it in whole or in part.

The judge found that "William A. Graustein is not a member of the bar; that he has been very careful to tell clients that he is not a member of the bar and that he has, before appearing in court, in every case called to my attention, obtained a power of attorney from the client to act as an attorney in fact; that each power of attorney called to my attention was on a stock form apparently drawn by him in advance in typewriting, with carbons, and with blanks left to fill in the name and address of the principal, the name of the case, the place and date of execution and the signature of the principal; that when he obtained a client having a case in court, he would produce a form, fill in the blanks and have the client execute it; that for the past twenty years he has devoted his time wholly to carry-

ing on litigation of a substantial nature; that he is not engaged in any other occupation; that he now turns clients away in droves; that he had cases in 1932 that were of vast importance and tried in some instances against leading members of the bar; that since 1925 his practice has been chiefly in jury waived cases; that he has appeared in the Superior Court in two hundred seventy-seven cases, has also appeared to some extent in the Supreme Judicial Court and in the Federal courts; that he has practised in the other courts of the Commonwealth, but does not now practise in a lower court; that he has given advice to clients on many matters; that it has been his custom to charge for his services, except in cases done for charity"; that "In the cases in which he appeared in court for J. Mannos & Sons, Inc., he obtained and filed a power of attorney"; that "No power of attorney was given with regard to any case not then actively pending in court or in the other legal matters that he carried on for the company under his agreement"; that "from early in January, 1932, to early in January, 1933, William A. Graustein performed or did everything that a general counsel for the corporation could do in handling its affairs, although he testified and insisted that he was not doing legal business; that he devoted four hundred thirty-six hours to the legal affairs of J. Mannos & Sons, Inc., during this period . . ."; that "whenever claims against the J. Mannos & Sons, Inc., came up he staved them off as long as possible and then made as favorable a settlement as he could"; that "he tried several cases in court for the corporation"; that "he paid all the expenses of the case of Brooks *et al. v.* Commonwealth *et al.*"; that "he disposed of most of the fifteen cases above referred to"; that "by his efforts the corporation was saved from bankruptcy or a receivership, permitting the performance of contracts with the Commonwealth amounting to at least $20,000"; that "his contract contemplated and that he performed legal business for J. Mannos & Sons, Inc., to as great an extent as any lawyer could have done"; and "that all matters referred to him have been finished."

The judge ruled that "the contract between J. Mannos & Sons, Inc., and William A. Graustein is champertous; that the provisions of § 49 of G. L. c. 221 were not intended to permit a person not a member of the bar to engage in the general practice of law by obtaining a power of attorney from his client in each court case; that the provisions of this section apply only to the casual employment of a person not a member of the bar; that the Legislature by statutes has provided a system of law setting forth the minimum requirements of those persons who may engage in the general practice of the law 'in the exercise of the police power to protect the public from those lacking in ability, falling short in learning, or deficient in moral qualities, and thus incapable of maintaining the high standard of conduct justly to be expected of members of the bar'; that it is contrary to the public policy laid down by the Legislature and promulgated by the courts for over a century to permit a person not a member of the bar to engage in the general practice of the law by such a subterfuge; that the provisions of the contract between J. Mannos & Sons, Inc., and William A. Graustein provided for and the performance of the contract resulted in such a general practice of the law by William A. Graustein as is contrary to public policy; and that such contract and assignment is void on the ground that it is both champertous and contrary to public policy."

A decree was entered based upon the above finding dismissing the claim of Graustein to the fund in question. Other disposition of the fund was made by the decree in accordance with other claims. The appeals by Graustein bring up the question of the correctness of the ruling by the trial judge that the contract and assignment to Graustein were void both for champerty and as being contrary to public policy.

It appears in the record that "The cases were tried . . . upon the understanding that the several issues involved would be fully tried out and findings of fact made, whether or not such findings were necessary to determine the cases upon the strict rules of pleading or of law, in order that

the various matters in controversy between the several parties might be determined in one hearing." In view of this statement it seems hardly open to Graustein to contend, as he has done in his brief, that the question of the champertous nature of the agreement, as well as its illegality as being in violation of public policy, was not open to be determined. The trial judge could consider it even in the absence of express pleading. See in this connection *Cardoze* v. *Swift*, 113 Mass. 250; *Dunham* v. *Presby*, 120 Mass. 285, 289; *Claflin* v. *United States Credit System Co.* 165 Mass. 501, 503; *Hadlock* v. *Brooks*, 178 Mass. 425, 436; *O'Brien* v. *Shea*, 208 Mass. 528, 534–535. Williston, Contracts, § 1630 a.

"Champerty is defined to be 'the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute or some profit out of it,' 'whereupon the champertor is to carry on the party's suit at his own expense.'" *Holdsworth* v. *Healey*, 249 Mass. 436, 439, quoting *Scott* v. *Harmon*, 109 Mass. 237, 238. Also see *Weinberg* v. *Magid*, 285 Mass. 237.

The appellant contends that this agreement does not come within the general principles of the cases cited. His contention primarily proceeds on the basis that he did not agree to perform services for a share of what was recovered by litigation, but rather that he obtained the entire interest in a claim by purchase in consideration of other services to be rendered, and hence prosecuted his own case. He bases the main foundation for this contention on a finding by the trial judge to the effect that "this assignment of January 16, 1932, to William A. Graustein of the claim of J. Mannos & Sons, Inc., in the intervening petition filed in the case of Brooks *et al.* v. Commonwealth *et al.* was an absolute sale of this assignment to him upon the consideration above set forth."

The mere form of the assignment here is not conclusive of the interest which the appellant had in that suit. It is necessary to look to the agreement which prompted its execution to see whether the transaction was champertous

in nature. See *Belding* v. *Smythe,* 138 Mass. 530. *Gargano* v. *Pope,* 184 Mass. 571.

The absolute sale referred to by the trial judge in his finding appears to be the assignment of the claim for the undertaking by Graustein that "he would undertake the prosecution of its claim and all the other suits that had been brought against the corporation . . . that he would bear all the expenses of prosecuting the claim against the Commonwealth including the expense of taking it to the Supreme Judicial Court if necessary without further charge to the corporation . . . ." This finding makes it clear that Graustein had an obligation by virtue of the agreement to do work not only in other cases and legal matters but that he also obligated himself to do work in the Commonwealth case. Also he agreed to bear all the expenses of prosecuting the claim.

By the terms of the agreement with the defendant, Graustein was to receive and did receive an absolute assignment of the defendant's interest in the pending intervening petition in the case of Brooks *et al.* v. Commonwealth *et al.* In consideration of this assignment Graustein undertook the prosecution of its claim in that suit and other suits in which the defendant was a party, and agreed to perform all legal services of every nature required by the defendant for a certain period of time, and to bear all the expenses of prosecuting the claim against the Commonwealth without further charge to the defendant. His services and expenses were not to constitute a debt due him from the defendant. The only compensation for his services and expenses was to be what he recovered out of the claim. Although the assignment was in form absolute, and the services to be performed were to be without further charge to the defendant, the agreement contemplated the continued prosecution of the claim and the acquiring by Graustein of the absolute ownership of the *res* which was involved in the pending intervening suit. It is plain that where one acting as an attorney agrees to prosecute a suit in behalf of his client for certain sums of

money in which he himself has no personal interest, and in case of success is to have as his own some part of the thing recovered or some profit out of it, the agreement is illegal if it provides that the attorney's services shall not constitute a debt due from the client and that his only compensation is to be his share or profit out of that which is recovered. *Wood* v. *Downes*, 18 Ves. 120, 126.   *Thurston* v. *Percival*, 1 Pick. 415.   *Gargano* v. *Pope*, 184 Mass. 571.   *Holdsworth* v. *Healey*, 249 Mass. 436.   *Weinberg* v. *Magid*, 285 Mass. 237.

The facts distinguish this case from cases where the attorney agrees to give his services should the suit not be successful but if the suit is successful the services are to constitute a debt from the client, *Hadlock* v. *Brooks*, 178 Mass. 425; *Walsh* v. *White*, 275 Mass. 247; from cases where the attorney is to be paid in any event, the amount of the fee being dependent upon the amount recovered, *Blaisdell* v. *Ahern*, 144 Mass. 393; *Taylor* v. *Rosenberg*, 219 Mass. 113; and from cases where there is no agreement that the attorney is not to be paid if unsuccessful, *Bennett* v. *Tighe*, 224 Mass. 159; *Smith* v. *Weeks*, 252 Mass. 244.

Of course if the attorney has a personal interest in the thing sought to be recovered, *Reed* v. *Chase*, 238 Mass. 83, or if the action does not involve a suit or antagonistic proceeding, *Joy* v. *Metcalf*, 161 Mass. 514, *Manning* v. *Sprague*, 148 Mass. 18, or is of a commercial nature, *Joy* v. *Metcalf*, 161 Mass. 514, the fact that payment is contingent on success and is to be a share of the proceeds will not render the agreement champertous.   An attorney's contract to bear the expenses of the suit may be illegal without stipulating in terms that the compensation is to be solely by way of interest in the thing recovered.   The element of illegality may be inferred from an agreement to prosecute at one's own expense and risk unless successful.   *Hadlock* v. *Brooks*, 178 Mass. 425.   *Holdsworth* v. *Healey*, 249 Mass. 436.   It is plain that if Graustein acted for the defendant and performed the services for the defendant in the case of Brooks *et al. v.* Commonwealth *et al.* as part of the consideration for the interest in the recovery, he was promoting litigation for an interest in the proceeds.

The contention of Graustein is that the proceedings were not antagonistic to the Commonwealth and therefore the principles applicable to champertous agreements have no force here, the proceedings being simply for the ascertainment of the amount of a recovery which was assumed. The cases of *Manning* v. *Sprague*, 148 Mass. 18, and *Joy* v. *Metcalf*, 161 Mass. 514, relied on by Graustein, have no application here and are distinguishable in the nature of the proceedings involved.

Graustein's contention that "The work to be performed by complainant in the intervening petition is neither illegal for maintenance or champerty, nor is it against public policy because (a) The intervening petition was pending"; and "(b) The intervening petition was neither a suit at law or equity" is unsound. It is sufficient to constitute champerty that there be an action pending or contemplated when the bargain was entered into. The contention that the petitions were not antagonistic is likewise unsound. While the Commonwealth might be regarded merely as a stakeholder, the proceeding was antagonistic as to others claiming the fund. The nature of the proceedings under G. L. c. 30, § 39, is pointed out in *Nash* v. *Commonwealth*, 174 Mass. 335, and in *Rees* v. *De Bernardy*, [1896] 2 Ch. 437, in which it is held that champerty may be found even if property sought to be recovered is in the hands of trustees, or in court, and no hostile action may be necessary to recover it. Graustein, however, contends that he did not agree to prosecution of the petition for a share in the thing recovered, but rather that he obtained the entire interest in the claim by purchase, in consideration of Graustein undertaking "the prosecution of its claim and all the other suits that had been brought against the corporation . . . that he would perform all legal services of every nature required by the corporation from the date of the assignment to the date of the decree in the case of Brooks *et al.* v. Commonwealth *et al.*; that he would bear all the expenses of prosecuting the claim against the Commonwealth including the expense of taking it to the Supreme Judicial Court if necessary"; and that he prosecuted the pending litigation in the name of the assignor as might

any assignee in an ordinary commercial transaction. Am. Law Inst. Restatement: Contracts, § 547.

The fiduciary relationship of attorney and client precludes the application of conditions governing ordinary mercantile bargaining. *Smith* v. *Weeks*, 252 Mass. 244, 251. *Slade* v. *Zeitfuss*, 77 Conn. 457, 460. The purchase by an attorney of the claim of his client in suit with intent to carry on the litigation at his own expense and for his own benefit is champertous and illegal. *Emerson* v. *McDonnell*, 129 Wis. 67. *Wood* v. *Downes*, 18 Ves. 120. Agreement with his attorney to give an interest in the *res* of a suit, and conveyance to him of an interest in the *res* of the suit by a client have been held valid only when the court has construed the agreement or conveyance as security merely, irrespective of its form. *Hall* v. *Hallet*, 1 Cox Ch. 134. *Scott* v. *Harmon*, 109 Mass. 237. *Bennett* v. *Tighe*, 224 Mass. 159. *Delval* v. *Gagnon*, 213 Mass. 203. But where the conveyance to the attorney has been construed as absolute, the transaction has been held champertous, and where the transfer to the attorney from the client is an absolute ownership of the *res* in litigation it has always been held champertous and void in this Commonwealth. *Ackert* v. *Barker*, 131 Mass. 436. *Thurston* v. *Percival*, 1 Pick. 415. *Lathrop* v. *Amherst Bank*, 9 Met. 489. *Lancy* v. *Havender*, 146 Mass. 615. *Belding* v. *Smythe*, 138 Mass. 530. *Smith* v. *Weeks*, 252 Mass. 244. *Webster* v. *Kelly*, 274 Mass. 564. It is plain that the assignment here was absolute and without any reserved right to look to the defendant for money advanced or for services rendered in the prosecution of the defendant's claim. On the findings of fact shown by the memorandum of the trial judge the agreement of Graustein was contrary to public policy and void and the assignment to Graustein was both champertous and contrary to public policy.

The ruling of the trial judge upon Graustein's requests numbered 9, 14, 18 and 19 was without error. It follows that the decree dismissing the intervening petition and "Claimant's Claim" of William A. Graustein because such were champertous, illegal and void should be affirmed. It further follows that the requests of Graustein numbered 20,

21, 23 and 25 become immaterial on the finding that the agreement and assignment were champertous and contrary to public policy, whether Graustein had or had not the rights of an attorney duly admitted to practice in the courts of this Commonwealth.

With the petition of William A. Graustein out of the case, there is no appeal from the final decree relating to the claims of other intervening petitioners.

*Decree affirmed, with costs against*
*William A. Graustein.*