Lauriat, J.
The plaintiffs, attorneys Norman Ber-man and Robert Marcus, brought this action against Edward Carroll to recover on a promissory note executed by Carroll as payment for legal services that Berman and Marcus had rendered to Carroll (Count I). Berman and Marcus also sued Thomas Linnane to reach and apply Linnane’s alleged obligations to Carroll, under a settlement agreement reached between Carroll and Linnane, in satisfaction of Carroll’s debt to Berman and Marcus (Count II). The settlement agreement arose from litigation between Carroll and Linnane over their failed real estate partnership. Ber-man and Marcus further sought to enjoin Linnane from transferring or conveying the properties allegedly owned by the partnership pending their request to the court to require Linnane’s specific performance of the settlement agreement (Count III).
On July 22, 1992, while the present action was pending, Carroll assigned and conveyed to Berman and Marcus all his interest in certain properties allegedly owned by the real estate partnership, as well as all claims that he had against Linnane arising out of Linnane’s alleged breach of the settlement agreement. Berman and Marcus thereafter amended their complaint to add a claim against Linnane for damages, including the value of the properties at issue, arising from Linnane’s alleged transfer of those properties to a third person in breach of his obligations to Carroll under the settlement agreement.
After Linnane timely claimed a jury trial in his answer to the plaintiffs’ amended complaint, this action was set for trial on April 26, 1993. At that time, the defendant Carroll was defaulted on Count I for failing to appear and defend the action, and the trial proceeded with a jury on Count IV. By agreement and by law, Count II was reserved to the court for findings of fact and rulings of law at the conclusion of the trial.
After an 11-day trial, the jury determined with respect to Count IV of the Amended Complaint, on special questions, that Linnane had breached the settlement agreement with Carroll, that at the time of Linnane’s breach, Carroll was ready, willing and able to perform his obligations under the settlement agreement, and that Carroll had make a valid and binding assignment to Berman and Marcus of his right to recover damages against Linnane for Linnane’s breach of the settlement agreement. The jury then determined that Carroll had sustained damages in the amount of $686,570.00 as a result of Linnane’s breach, and that Berman and Marcus were entitled to recover those damages against Linnane as assignees of Carroll’s rights under the settlement agreement.
Both parties have filed numerous post-trial motions, as well as proposed findings and rulings with respect to Count II of the Amended Complaint. The court has made findings and rulings separately on Count II; the present memorandum of decision addresses the parties’ post trial motions regarding Count IV of the Amended Complaint.
DISCUSSION
The defendant Linnane has moved for entry of a judgment notwithstanding the jury’s verdict or for a new trial on Count IV of the Amended Complaint on the ground, inter alia, that the “Assignment of Rights of Edward Carroll in Sevenel Properties and Certain Claims” (“the Assignment”) (Exhibit 11 at trial), by which Berman and Marcus brought their claim for *457 damages against Linnane under Count IV, is void and unenforceable.
I.
At first blush, the Assignment reflects a determination by Carroll to assign his rights, title and interest in certain real properties to Berman and Marcus in order to pay legal fees that he owed them for services they rendered on his behalf in his litigation with Linnane over their failed real estate partnership. However, upon careful review, the Assignment must be deemed null and void because it is champertous.
“Champerty is the maintenance, at the champertor’s expense, of a legal action in consideration of profit out of the action, if any." Allen v. Batchelder, 17 Mass.App.Ct. 453, 459 (1984), Sherwin-Williams Co. v. J. Mannos & Sons, Inc., 287 Mass. 304, 313 (1934), Scott v. Harmon, 109 Mass. 237, 238 (1871). “Cham-perty is a bargain to divide the proceeds of a litigation between the owner of the litigated claim and the party supporting or enforcing the litigation.” Williston on Contracts, 3d Edition, §1711.
An agreement between a lawyer and client is void for champerty if, “(t]here is no indication that there was to be any compensation [for costs and legal fees] in case of failure . . .” Gargano v. Pope, 184 Mass. 571 (1904). “The element of illegality may be inferred from an agreement to prosecute at one’s own expense and risk unless successful." Sherwin-Williams v. J. Mannos & Sons, Inc., 287 Mass. 304, 313 (1934). Further, “[a]s between an attorney . . . and his client it is of the essence of champerty that the attorney, having no previous interest to justify him, upon recovery is to have as his own some part of the thing recovered or some profit out of it.” Baskin v. Pass, 302 Mass. 338, 341 (1938).
However, an otherwise champertous agreement may be saved, “where there is to be a debt running from the client to the attorney in any event, even thought the amount may depend on the success of the suit and the fruits of the litigation are contemplated to be the means by which the fee will be paid.” McInerney v. Massasoit Greyhound Assn., Inc., 359 Mass. 339, 347 (1971), citing Blaisdell v. Ahern, 144 Mass. 393, 395; Taylor v. Rosenberg, 219 Mass. 113; Bennett v. Tighe, 224 Mass. 159. In addition, “[a] person is entitled ... to pay the legal expenses of another if he does so because he has some interest in the litigation.” Pupecki v. James Madison Corp., 376 Mass. 212, 220 (1978), citing Reed v. Chase, 238 Mass. 83, 86 (1921); Call v. Calef, 13 Met. 362, 365 (1847). Further, “any interest whatever in the subject matter of the suit is sufficient to exempt the party giving aid to the suitor from the charge of illegal maintenance.” Mitchell v. Amerada Hess Corp., 638 P.2d 441, 444 (Ok. 1982).
The doctrine of champerty developed during the Roman Empire. “Maintenance by Champerty,” Radin, Max, 24 Cal.Law.R. 48. In modern day Massachusetts, the Supreme Judicial Court has determined that, “[c]hamperty is a narrow and somewhat technical concept . . ." McInerney v. Massasoit Greyhound Assn., Inc., 359 Mass. 339, 347 (1971). Nevertheless, “(t)he principle against champerty is salutaiy. It has been long established." Holdsworth v. Healy, 249 Mass. 436 (1924) [cites omitted). And, while the concept may be narrow and technical, where it applies, it is valuable to preserve.
In order to assess whether a particular agreement is champertous, it is necessaiy to analyze the agreement itself. Sherwin-Williams v. J. Mannos & Sons, Inc., 287 Mass. 304, 312 (1934). Paragraph 1 of the Assignment in the present case, a copy of which is appended to this decision, provides that Carroll, as Assignor, “hereby sells, assigns, transfers, conveys and sets over unto Assignees [Berman and Marcus] all right, title and interest in the Sevenel Property ... and . . . each and every claim or cause of action against Linnane which Assignor may have, presently or at a later time, for violation of Linnane’s obligations under the Settlement Agreement between Assignor and Linn-ane dated October 27, 1989 . . . hereafter referred to collectively as the Assigned Rights,’ ’’ and that “Assignor shall retain no interest whatsoever in the Assigned Rights, except as provided herein . . .” Paragraph 2 provides that “Assignor [Carroll] . . . appoints] the undersigned Assignees [Berman and Marcus] to be his true and lawful attorneys . . .” and that Berman and Marcus, as Assignees, will pursue the litigation, “at Assignees’ cost and for the benefit of Assignees.”
Paragraph 3 of the Assignment provides that “[i]n the event Assignees obtain a Judgment [which judgment is otherwise undefined but is presumably against Carroll], Assignees agree to satisfy such Judgment initially through . . . the Sevenel Properties, in particular the Brook Farm Road property and the Seymour Road property . . . and to forbear execution on such Judgment against the personal assets of the Assignor unless . . . proceedings involving the Sevenel Property have resulted in payments to or for the benefit of the Assignees of less than a Satisfactory Recovery." “ ‘Satisfactory Recovery’ shall mean a payment . . . equal to the Judgment (including all interest and costs) entered or to be entered against Assignor in the Action [which term is also undefined]... or such lower amount as the Assignees in their sole discretion shall agree to accept.”
Paragraph 4 of the Assignment provides that “[i]n the event the Assignees recover any moneys or property from the Sevenel Property in excess of the Satisfactory Recovery, such excess will be distributed according to the following formula:
a. First, payment is to be made to the Assignees for all costs associated with prosecuting the claims;
b. Second, payment is to be made to the Assignees for reasonable attorneys’ fees; and
*458 c. The remainder is to be divided 40% to the Assignees and 60% to the Assignor.”
As set forth above, the sum and substance of the Assignment agreement is that Carroll has sold and transferred all of his interest in his claims against Linnane to Berman and Marcus. Berman and Marcus are free to pursue the claims against Linnane for their own benefit and at their own expense. If successful, Berman and Marcus have agreed to spilt the profits from their litigation against Linnane with Carroll. This is the essence of champerty.
Berman and Marcus assert that the Assignment agreement is valid because they have a legitimate interest in pursuing the litigation described in the Assignment as creditors of Carroll. They further suggest that the Assignment amounted merely to an assignment of Carroll’s interest as security rather than an assignment to prosecute the claim on their own behalf. Neither argument has merit.
The “independent, preexisting” interest claimed by Berman and Marcus is a promissory note from Carroll for $71,100 plus 10% interest. Carroll owes Berman and Marcus this amount, and Berman and Marcus have obtained a default judgment against Carroll for this debt. Thus, Berman and Marcus are judgment creditors of Carroll. They indeed have a claim against some of the monies that Carroll might obtain in a successful litigation for the Sevenel Properties, but that claim arises from their judgment creditor relationship to Carroll, not from their having an independent interest in Carroll’s claim against Linnane.
Nor is the Assignment agreement simply security for the monies owed by Carroll to Berman and Marcus under the promissory note. Nowhere does the Assignment state that it is a security interest for the monies owed. Instead, it clearly states in its title, in bold, capitalized letters, that it is an “Assignment of Rights of Edward Carroll in Sevenel Properties and Certain Claims." And, as paragraph 2 of the Assignment states, "Assignor does [appoint Berman and Marcus to be his attorneys] but at Assignees’ cost and for the benefit of Assignees.” If, in fact, the Assignment was to be security for the monies owed to Berman and Marcus, then it would have been limited to the amount of the promissory note, the accrued interest on that note, and the costs of litigation. Under those circumstances, Berman and Marcus would neither need nor be entitled to any additional sums. However, since the Assignment is not so limited, and indeed by its terms is unlimited, complete and unconditional, it cannot be deemed merely security for Berman and Marcus’s claim against Carroll.
While the Assignment agreement could arguably be construed as a contingent fee agreement, that contention too must fail. Contingent fee agreements are governed by Supreme Judicial Court Rule 3:05. “[T]he requirements of the rule are reasonable and its prohibitions are echoed in the law of many States which have antedated Massachusetts in their acceptance of contingent fees.” McInerney v. Massasoit Greyhound Assn., Inc., 359 Mass. 339, 349 (1971). In fact, “[djisciplinaiy Rule 2-106 (C) of Canon 2 of the Code of Professional Responsibility (359 Mass. 807 [1972]) provides that a ‘lawyer shall not enter into an arrangement for, charge, or collect a contingent fee, except as permitted by’ Rule SdOS][1]” Young v. Southgate, 379 Mass. 523, 524 (1980).[2]
Rule 3:05(5) of the Supreme Judicial Court Rules requires, inter alia, that “[e]ach contingent fee agreement contain . . . (e) a statement that reasonable contingent compensation is to be paid for such services, which compensation is not to exceed stated maximum percentages of the amount collected; and (f) a stipulation that the client, in any event, is to be liable for expenses and disbursements.” The Assignment at issue here satisfies neither subparagraph (e) or (f) of Rule 3:05(5). If Carroll is assumed to be the client under the Assignment, there is no definition of or limitation on the amount of “reasonable attorneys’ fees” that Berman and Marcus may charge, nor does the Assignment require Carroll to remain responsible for the expenses and disbursements generated by the litigation.[3] If, instead, Berman and Marcus are assumed to be the clients, then the Assignment fails to identify the attorneys that are to be retained or paid on a contingent fee basis. Finally, if Berman and Marcus are assumed to be both the clients and the attorneys, then there is no need or justification for a contingent fee agreement at all. Thus the Assignment is simply an agreement for “the division of the proceeds of a litigation between the owner of the litigated claim (Carroll) and a party supporting or enforcing the litigation (Berman and Marcus),” and it is therefore champertous.
Thus, the court concludes that the Assignment agreement between Marcus, Berman and Carroll (Exhibit 11) is champertous, and therefore null and void. Accordingly, the defendant Linnane’s Motion for Judgment Notwithstanding the Verdict must be allowed as to Count IV of the Amended Complaint, the jury’s verdict on Count IV must be set aside, and Judgment must enter on Count IV in favor of the defendant Thomas Linnane.
II.
Linnane has also moved, pursuant to Mass.R.Civ.P. 59, for a new trial on Count IV of the Amended Complaint. Mass.R.Civ.P. 50(c)(1) provides that “if the motion for judgment notwithstanding the verdict . . . is granted, the court shall also rule on the motion for a new trial . . . and shall specify the grounds for granting or denying the motion for a new trial.”
The grounds asserted by Linnane in his motion for a new trial are that “(1) the verdict was against the weight of the evidence, (2) the verdict was against the law, there being prejudicial error by the Judge who conducted the trial, (3) the damages awarded were *459 grossly excessive, and (4) a new trial is necessary to prevent a failure of justice.” The memoranda of law submitted by Linnane in support of his motion for a new trial raise only two issues: champerty and the court’s ruling prohibiting trial counsel for Linnane from cross-examining Berman regarding his rendering of legal services to Carroll.
As has been determined above, the Assignment between Berman and Marcus and Carroll is champer-tous and therefore null and void. For that reason, Carroll’s motion for a new trial must be allowed, although a new trial on Count IV would appear to be precluded because interpretation of a contract is a matter for the court, not the jury, and in this case the court has concluded that the Assignment is champer-tous. The remaining grounds asserted for Linnane’s new trial motion are without merit and the motion for a new trial made on those grounds must be denied.
ORDER
For the foregoing reasons, the Motion for Entry of Judgment Notwithstanding Verdict on Count IV of the Amended Complaint is ALLOWED, the verdict of the jury on Count IV is set aside, and Judgment on Count IV shall enter for the defendant Thomas Linnane. The Motion for a New Trial on Count IV of the Amended Complaint is ALLOWED on the ground that the Assignment agreement between and among Marcus, Berman and Carroll is champertous, but is otherwise DENIED.

 formerly, S.J.C. Rule 3:14.

 Moreover, Supreme Judicial Court Rule 3:07, DR 5-103(A) states: “A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may: (1) Acquire a lien granted by law to secure his fee or expenses. (2) Contract with a client for a reasonable contingent fee in a civil case.” Since neither of these exceptions applies to the present Assignment agreement, the Assignment also appears to violate DR 5-103(A).

 The Assignment itself supports the conclusion that Carroll was the client and Marcus and Berman his attorneys, since Paragraph 7 of the Assignment provides that “Assignor and his undersigned counsel [Marcus and Berman] further agree to cooperate in confirming to any court or any other person or entity the validity of this assignment. . .”